Michael JONES, Appellant (Plaintiff Below),

v.

CITY OF LOGANSPORT; Clyde E. Williams and Associates, A Corporation; Zimpro, Inc., A Division of Sterling Drug Company, A Corporation, Appellees (Defendants Below),

v.

The GRUNAU COMPANY, INC., (Third Party Defendant Below).

No. 3-781A181.

Court of Appeals of Indiana, Third District.

June 24, 1982.
Rehearing Denied Aug. 25, 1982.

Floyd F. Cook, Kokomo, Smith Helmerick & Smith, Lafayette, for appellant.

Tom F. Hirschauer,. Logansport, for appellee City of Logansport.

Paul E. Becher, Elkhart, for appellee Clyde E. Williams and Associates, Inc.

Arthur G. Surguine, Fort Wayne, for appellee Zimpro, Inc., A Division of Sterling Drug Co., A Corp.

STATON, Judge.

In 1977, the City of Logansport, Indiana was in the process of having a waste treatment plant constructed. The construction was divided into two divisions. Each division had a prime contractor and several subcontractors.

Michael Jones was an apprentice plumber. He was employed by a subcontractor on the construction division known as Grunau. Jones was instructed to help move a large pump into a building. As he was holding a cable attached to a crane, the crane either came into contact with high voltage electrical lines or was close enough to the lines for the electricity to arc from the electrical lines to the crane.[1]

Jones filed a complaint alleging that he had suffered serious, electrical burn injuries as a result of the negligence of the City of Logansport; Clyde E. Williams and Associates; Zimpro, Inc., a Division of Sterling Drug Company, a corporation; Geupel De-Mars Company; and Speedway Crane Company.[2] Williams was not a defendant at the trial because its motion for summary judgment had been granted. The jury found in favor of Logansport and Zimpro and against Jones.

On appeal, Jones raises over twenty issues. As we affirm in part and reverse and remand in part, the issues that need be discussed can be stated as follows:

(1) Did the trial court err by granting Williams' summary judgment motion?

(2) Was a nondelegable duty owed to Jones by both Zimpro and Logansport such that the trial court erred when it refused to give certain instructions concerning the nondelegable duty?

## I.

### Summary Judgment

Clyde E. Williams and Associates and Logansport had executed a contract whereby Williams was the authorized representative of Logansport. Williams furnished Logansport with a full time, resident project representative at the project site during construction. In its summary judgment motion, Williams stated that it could not be found liable because it did not owe any duty of care to Jones. Jones argues that the trial court erred when it granted the motion for summary judgment.

---

1. The electrical lines were described as three wires 13,800 ph to ph, three phase.

2. Jones dismissed his action against Speedway Crane Co. and Geupel DeMars.

■ The purpose underlying the summary judgment procedure is to terminate those causes of action which have no factual dispute and which may be determined as a matter of law. This procedure is an aid in eliminating undue burdens upon litigants and exposing spurious causes. However, the summary judgment procedure must be applied with extreme caution so that a party's right to the fair determination of a genuine issue is not jeopardized; mere improbability of recovery by the plaintiff does not justify summary judgment for a defendant. *Bassett v. Glock* (1977), Ind.App., 368 N.E.2d 18, 20–21.

■ The summary judgment procedure is an application of the law to the facts when no factual dispute exists. The party seeking the summary judgment, therefore, has the burden to establish that there is no genuine issue as to any material fact. Any doubt as to a fact, or an inference to be drawn therefrom, is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corp.* (1980), Ind.App., 407 N.E.2d 1181, 1184.

■ A fact is material if its resolution is decisive of either the action or a relevant secondary issue. *Lee v. Weston* (1980), Ind.App., 402 N.E.2d 23, 24. The factual issue is genuine if it can not be foreclosed by reference to undisputed facts. That is, a factual issue is genuine if those matters properly considered under TR. 56 evidence a factual dispute requiring the trier of fact to resolve the opposing parties' differing versions. *Stuteville v. Downing* (1979), Ind. App., 391 N.E.2d 629, 631.

■ Although TR. 56 permits the introduction of affidavits, depositions, admissions, interrogatories and testimony to aid the court in the resolution of the motion for summary judgment, the procedure involved is not a summary trial. *Bassett v. Glock, supra.* In determining whether there is a genuine issue of material fact, the court considers those facts set forth in the non-moving party's affidavits as true, and liberally construes the products of discovery in favor of the same party. And finally, all pleadings, evidence, and inferences therefrom are viewed in the light most favorable to the non-moving party. *Poxon v. General Motors Acceptance Corp., supra.* In reviewing a grant of summary judgment, this Court uses the same standard applicable to the trial court. *Richards v. Goerg Boat & Motors, Inc.* (1979), Ind.App., 384 N.E.2d 1084, 1090 (*trans. denied*). We must reverse the grant of a summary judgment motion if the record discloses an unresolved issue of material fact or an incorrect application of the laws to those facts. *Id.*

■ The initial question is whether a duty was owed to Jones by Williams. The court must determine as a matter of law if a legal relationship exists from which a duty of care arises. *Walters v. Kellam & Foley* (1977), 172 Ind.App. 207, 360 N.E.2d 199, 205 (*trans. denied*). Williams could have a duty of care imposed upon it either (a) by contract or (b) by voluntarily assuming a duty of care through its affirmative conduct. *Clyde E. Williams & Associates, Inc. v. Boatman* (1978), Ind.App., 375 N.E.2d 1138, 1141. If a duty of care is assumed through affirmative conduct, it must be determined exactly what has been undertaken because liability is no broader than the actual duty assumed. *Board of Commissioners of Monroe County v. Hatton* (1981), Ind.App., 427 N.E.2d 696, 699–700 (*trans. pending*).

### A. Contract

■ It is the duty of the court to interpret the contract so as to ascertain the intent of the parties. It must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting. *Evansville-Vanderburgh School Corp. v. Moll* (1976), 264 Ind. 356, 344 N.E.2d 831. The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or even paragraphs read alone. *Evansville-Vanderburgh School Corp., supra; Oser v. Commercial U. Ins.*

*Companies* (1980), Ind.App., 409 N.E.2d 706. (*trans. denied*).

In interpreting a written contract, the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Shahan v. Brinegar* (1979), Ind. App., 390 N.E.2d 1036. If the contract is ambiguous [3] or uncertain in its terms and if the meaning of the contract is to be determined by extrinsic evidence, its construction is a matter for the fact finder. Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations. *Huntington Mut. Ins. Co. v. Walker* (1979), Ind. App., 392 N.E.2d 1182; *Shahan, supra.* If, however, the ambiguity arises because of the language used in the contract and not because of extrinsic facts, then its construction is purely a question of law to be determined by the trial court. *Huntington, supra; Clyde E. Williams & Assoc., Inc., supra.*

Jones argues that Williams' contract with Logansport imposes upon Williams a duty of care towards Jones. Jones directs our attention to selected passages of the contract. Through this selective reading, Jones concludes Williams was required to exercise due care to make the premises reasonably safe and "to supervise the conduct of work methods and the implementation of plans and specifications with reasonable care."

When the complete contract is read, it is obvious that Williams was not responsible for the methods used in the construction of the project and that Williams was not responsible for the safety of employees of contractors or subcontractors. Section 1.5.3 of the contract states:

"[Williams will] make periodic visits to the site of the work to observe the progress and quality of the executed work to determine in general if the work is proceeding in accordance with the Contract Documents; he will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the work; *he will not be responsible for the methods used and sequences of construction;* and he will not be responsible for the Contractor's failure to perform the construction work in accordance with the Contract Documents; but he will determine to his own satisfaction that the interests of the Owner generally are safeguarded; and during such visits and on the basis of his on-site observations as an experienced and qualified design professional, he will keep the Owner informed of the progress of the work by submitting written progress reports as required by the Owner, *will endeavor to guard the Owner against defects* or deficiencies in the work of Contractors, and may disapprove work as failing to conform to the Contract Documents." (Emphasis added.)

From the contract, it is clear [4] that Williams was employed to try to reduce the incidents of defective construction of the items being built; it was not employed to reduce negligent construction techniques. Williams was to "provide general engineering *administration* of the construction contract..." (Emphasis added.) Williams was not responsible for the safety of Jones.[5]

---

3. The standard for determining ambiguity is whether a reasonably intelligent person would, upon reading the contract, honestly differ as to its meaning. *Huntington Mut. Ins. Co. v. Walker* (1979), Ind.App., 392 N.E.2d 1182.

4. Jones argues, "The conflicting provisions makes [*sic*] the contract ambiguous so that the intent of the parties can only be determined with extraneous evidence." We do not agree with Jones because it is possible to interpret the contract such that the provisions are found to be in harmony rather than in conflict.

5. Jones cites many cases that he argues support imposing upon Williams a duty regarding worker safety. These cases are distinguishable upon their faces because in those cases the agents specifically assumed safety responsibilities or the responsibilities assumed exceeded the mere obligation to assure that the structure will conform to the plans and specifications. Williams did not assume such responsibilities.

■ Jones attempts to add additional duties to Williams by quoting Articles 28.3 and 28.5 of the contract between Zimpro and Logansport. Jones seems to be arguing that a contract between a third party and the principal (in which the agent is stated to have certain rights over the third party) may define additional duties the agent owes to the principal. We do not agree because an agency relationship arises out of a contractual agreement between the principal and the agent, *Lewis v. Davis* (1980), Ind. App., 410 N.E.2d 1363, 1366; the contract between Williams and Logansport, which defines the scope of the duties of Williams, does not contain the duties found in the Zimpro contract.

■ Jones also argues that Williams failed to make an adequate and competent survey of the problems associated with the construction of the waste treatment plant because it ignored the electrical transmission lines directly over the job site where workers would be required to work with cranes. Jones argues we must accept this as being true since Williams did not demonstrate the absence of this factual issue by filing affidavits.

Jones has ignored the depositions that were ordered published by the trial court in its pre-trial order of April 21, 1979.[6] Taking all the facts in the light most favorable to the non-moving party, Jones, it is obvious that workers were not required to work with cranes under the electrical transmission lines in order to construct the project. John Neal, Jr. testified in his deposition that it was not necessary to use a crane to move the large pumps underneath the electrical transmission lines. He stated that after the accident a bulldozer was used to move the pump underneath and away from the electrical lines.

■ Jones further argues that Williams had a contractual duty to warn any utility of any hazard involving utility services. Jones has failed to provide us with a citation to the part of the record which contains this contractual requirement. We are unable to find this duty in the contract. Jones has waived this argument. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).[7]

## B. Conduct

■ Williams could have assumed a duty of care regarding worker safety through its affirmative conduct. We have examined the pleadings. Jones did not allege that Williams had assumed a duty through its affirmative conduct nor did he allege facts which demonstrated that Williams had assumed a duty of care. This issue was not before the trial court.[8]

## II.

### Nondelegable Duty

Jones argues that the trial court erred when it denied his instructions concerning the nondelegable duties of Zimpro[9] and Logansport and, instead, gave instructions submitted by Zimpro.

■ We agree that a party is entitled to have an instruction submitted to the jury based upon his theory of the case if it accurately states the law, if it is within the issues raised in the case, and if it is supported by the evidence. *Lewis, supra;*

---

**6.** TR. 56 allows Williams to defeat Jones on summary judgment by use of depositions.

**7.** As we prefer to decide issues upon their merits, we decided to attempt to find various items Jones argued existed in the record. We were not always successful, as was demonstrated above. We have also struggled to decipher all the issues and answer them in this opinion. Any issue we missed is deemed waived as Jones had the duty to clearly present the issues and argument. AP. 8.3(A)(7). *McManus v. State* (1982), Ind., 433 N.E.2d 775.

**8.** Jones argues that whether a duty exists is a mixed question of law and fact. He argues that the trial court must have all the facts before it could determine whether Williams owed Jones a duty. We do not agree that the question of law and fact can not be separated. As was mentioned above, Jones failed to bring before the trial court the question of fact regarding conduct.

**9.** Zimpro, Inc., a Division of Sterling Drug Co., a corporation, was the prime contractor of the division of the project upon which Jones worked. Zimpro had subcontracted part of the work to Grunau, Jones' employer.

*Smith v. Insurance Company of North America* (1980), Ind.App., 411 N.E.2d 638, 642. It must be remembered that the giving of jury instructions is a matter primarily entrusted to the discretion of the trial court. *Id.* A refusal to give a tendered instruction is grounds for reversal only if the substance of the instruction was required to be given and was not adequately covered by other instructions given by the court, *Id.*; therefore in determining whether any error resulted from the refusal to give a tendered instruction, we consider: (1) whether the tendered instruction is a correct statement of the law, (2) whether there is evidence in the record to support the giving of the instruction, (3) whether the substance of the instruction is covered by other instructions which were given.

### A. Zimpro

The trial court modified Jones' instruction no. three to read as follows:

"The Court instructs the jury that at the time of the accident with which this controversy is concerned, there was in full force and effect, pursuant to Burns Indiana Administrative Regulations, (22–1–1–10) L 1 (6)(7)(8), the following regulation:

"(6) The prime contractor of a project shall be deemed as being responsible for compliance with the provisions of this Code. In the event there is more than one prime contractor on a project, each shall be responsible for compliance of this code within the area of his jurisdiction.

"(7) In the event the prime contractor sublets all or parts of the prime contract, the subcontractors shall be jointly responsible with the prime contractor for compliance with this code, within the area of the subcontractor's jurisdiction.

"(8) The term 'prime contractor' shall be interpreted as being the person, firm, or corporation that is responsible to the awarding unit for direct or indirect completion of all or part of the overall project.

"I further instruct you that Zimpro, Inc., pursuant to its contract with the City of Logansport, the awarding unit, was a prime contractor and responsible under the law for compliance with the regulations found in the Indiana Industry Safety Code, Burns Indiana Administrative Regulations (22–1–1–10) L 95, which, so far as applicable to this case, provided:

'power shall be cut off from electric lines within range of shovel or crane operation whenever possible. When not possible to cut off power the shovel or crane shall not be operated within electrical reach of electric transmission lines.'

"You may consider this portion of the code to determine if the conduct of any party would support a finding of a failure to exercise due care. You are instructed that the duty to exercise due care for any party is imposed by law apart from any regulation."

The pertinent part of Jones' rejected instruction, which replaced the last paragraph of the modified instruction, is as follows:

"The defendant, Zimpro, Inc., as a prime contractor, had the legal duty to comply with the foregoing regulation and defendant, Zimpro, Inc., could not delegate the work being done by the subcontractor, The Grunau Company, Inc., and avoid the duty which required the work to be done in compliance with the code. I am instruction [*sic*] the jury that if you find from a fair preponderance of the evidence in this case that Grunau and Company, by its employees, violated the foregoing regulations, then, Zimpro, Inc., is as much responsible for Grunau and Company's failure to comply with the code as if Zimpro, Inc., had, by its servants and employees, violated the code.

"If you further find that Grunau and Company, Zimpro's sub-contractor, operated a crane within electrical reach of high voltage electric transmission lines, or that Zimpro, Inc., failed to see that the foregoing code was complied with, in violation of the Regulation which required that power shall be cut off from electric lines within range of shovel or crane operation whenever possible, and when not

possible, the crane shall not be operated within electrical reach of the transmission lines, then Zimpro, Inc., was guilty of negligence, unless you further find from a fair preponderance of the evidence that under circumstances shown in evidence which resulted from causes and from things beyond defendants' control and not produced by his own negligence, it was impossible or excusable for him to comply with said regulation."

■ Generally, the prime contractor is not liable for injuries to employees of independent subcontractors. *Hale v. Peabody Coal Co.* (1976), 168 Ind.App. 336, 343 N.E.2d 316, 320–321. As was recognized in *Denneau v. Indiana & Michigan Electric Company* (1971), 150 Ind.App. 615, 277 N.E.2d 8, 12 (*trans. denied*), these are the following five exceptions to the general rule:

(1) the contract requires the performance of work intrinsically dangerous;

(2) a party is by law or contract charged with a specific duty;

(3) the act will create a nuisance;

(4) the act to be performed will probably cause injury to others unless due precaution is taken to avoid harm;

(5) the act to be performed is illegal. Jones' theory was that Zimpro had a nondelegable duty to him because by law or contract Zimpro was charged with the specific duty to provide him with a safe place to work. The theory of his instruction is that the nondelegable duty was imposed by the regulations of the Indiana Commissioner of Labor found at 610 IAC 5–1–1 *et seq.* and that these regulations created the standard of care by which the jury should compare the conduct of Zimpro. Jones argues that the modified instruction incorrectly stated the law and instructed the jury not

to consider the regulations as a duty imposed by law.

■ 610 IAC 5–1–1(6), (7), and (8) does impose a specific duty upon prime contractors to insure that the safety regulations of the Commissioner of Labor are followed. *Smith v. P. & B. Corp.* (1979), Ind.App., 386 N.E.2d 1232, 1237 (*trans. denied.*) [10] 610 IAC 5–1–1(7) specifically states that the prime contractor and the subcontractor shall [11] be jointly responsible for the compliance with the safety regulations. Zimpro attempts to avoid this responsibility by noting that 610 IAC 5–1–12(1) states the following:

"(1) In all power driven shovel operations the person in charge shall issue instructions necessary to prevent accidents, to detect and correct unsafe acts and dangerous conditions, and to enforce all safety rules and regulations pertaining thereto."

Zimpro argues that this regulation relieves it of the responsibility imposed by 610 IAC 5–1–1(6) and (7). Assuming *arguendo* that 610 IAC 5–1–12(1) applies to crane operations,[12] it does not relieve Zimpro of the duty imposed by 610 IAC 5–1–1(6) and (7).

■ Zimpro argues that a *specific* duty was not imposed; it can not be liable when its duty was ill-defined. The duty of Zimpro was to insure compliance with the following regulation:

"Power shall be cut off from electric lines within range of shovel or crane operation whenever possible. When not possible to cut off power the shovel or crane shall not be operated within electrical reach of electric transmission lines." 610 IAC 5–1–12(21). We find this regulation to be perfectly clear; the argument of Zimpro is without merit.

■ The substance of Jones' rejected instruction was not covered by another in-

---

**10.** In *Smith v. P. & B. Corp., supra,* these regulations are referred to as Burns Administrative Rules and Regulations, §§ (40–2139)—L 1 C (6), (7), and (8).

**11.** 610 IAC 5–1–1(1)(c)(1) states that the word "shall" be deemed mandatory.

**12.** 610 IAC 5–1–12(1) refers to power driven shovel operations. Other regulations refer specifically to cranes. 610 IAC 5–1–12(21) refers to shovel *or* crane operations, which seems to imply that cranes would be specifically mentioned in 610 IAC 5–1–12(1) if it applied to cranes; however, we need not decide this matter.

struction given by the trial court. There was evidence to support the giving of the instruction. The trial court erred by rejecting the above quoted paragraphs of Jones' instruction.

As several of the issues raised by Jones are certain to continue to plague this action, we find it in the interests of judicial economy to address these issues.

■ Zimpro also owed Jones a nondelegable duty of care by the terms of the contract between Zimpro and the City of Logansport. The contract states:

"ARTICLE 15. SAFETY AND PROTECTION; EMERGENCIES; OSHA COMPLIANCE

"15.1 *The Contractor shall be solely responsible for* initiating, maintaining and supervising *all safety precautions and programs* in connection with the Work. *He will take all necessary precautions for the safety of, and will provide the necessary protection to prevent* damage, *injury* or loss to:

"15.1.1 *all employees* on the Work, *including those of subcontractors*, the Owner, the. Engineer, other contractors, etc., and all other persons who may be affected thereby,

\* \* \* \* \* \*

"15.2 *He will comply with all applicable safety and building laws and codes* of federal, state, municipal and other governmental bodies for the safety of persons or property or to protect them from damage, injury or loss. He will erect and maintain, as required by the conditions and progress of the Work, all necessary safeguards for their safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners of adjacent utilities. When the use or storage of explosives or other haz-ardous materials is necessary for the execution of the Work, the Contractor will exercise the utmost care and will carry on such activities under the supervision of licensed specially qualified personnel. *All* damage, *injury* or loss *to any persons* or property *caused*, directly or indirectly, *in whole or in part, by the Contractor, any subcontractor or anyone* directly or indirectly *employed by any of them* or anyone for whose acts any of them may be liable, *will be remedied by the Contractor.*

\* \* \* \* \* \*

"15.5 The Contractor shall comply in every respect with the Williams-Steiger Occupational Safety and Health Act of 1970 (OSHA) and all rules and regulations now or hereafter in effect under this Act. He shall also comply in every respect with all state and local laws and regulations pertaining to job safety and health." (Emphasis added.).

This contract clearly abrogates the normal relationship between a prime contractor and a subcontractor. Zimpro accepted a nondelegable duty to Jones.[13]

■ Zimpro argues that the violation of OSHA regulations does not create a private right of action. He cites *Russell v. Bartley* (6th Cir. 1974), 494 F.2d 334, 335 and *Jeter v. St. Regis Paper Co.* (5th Cir. 1975), 507 F.2d 973, 977. However, in the instant case, the OSHA regulations were incorporated by reference into the contract as a convenience to the parties to relieve them from having to draw up their own construction guidelines. *Horn v. C. L. Osborn Contracting Co.* (5th Cir. 1979), 591 F.2d 318, 322. These OSHA regulations are relevant not as federally promulgated safety regulations but rather, as contract terms setting forward an agreed upon standard of safety. The violation of these contract terms is therefore not negligence per se; rather, the violation of these terms may be considered by the trier of fact as evidence of negli-

---

**13.** Contract provisions between the prime contractor and the owner have created a nondelegable duty owed by the prime contractor to the subcontractor's employees in the following cases: *Smith v. United States* (5th Cir. 1974),

497 F.2d 500, 512–514; *Presser v. Siesel Construction Co.* (1963), 19 Wis.2d 54, 119 N.W.2d 405; *Kelley v. Howard S. Wright Construction Co.* (1978), 90 Wash.2d 323, 582 P.2d 500.

gence. *Stepanek v. Kober Construction* (1981), Mont., 625 P.2d 51, 56; *Contra, Kelley v. Howard S. Wright Construction Co.* (1978), 90 Wash.2d 323, 582 P.2d 500, 508.

■■ The tendered instructions of Zimpro numbered two through five presumed that Zimpro did not have a nondelegable duty to Jones. Since Zimpro had a nondelegable duty to Jones imposed by contract and statute, the trial court erred in giving Zimpro's tendered instructions.

■■ The trial court also rejected Jones' tendered instruction no. five, which read as follows:

### "INSTRUCTION NO. 5

"You are instructed that one who employs an independent contractor to do work and who has knowledge during the progress of the work that a peculiar risk, such as operation of a crane in close proximity to high voltage wires, is likely to create a risk of serious *injury to others* unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the independent contractor or his subcontractor to exercise care to take such precautions even though the owner-contractee has provided for such precautions in the contract or otherwise." (Emphasis added.)

Jones argues that this is a logical extension of the law under the fourth exception to the general rule as outlined above. We need not concern ourselves with the extension of the law as the phrase "injury to others" has always been interpreted to apply only to third persons and not the employees actually involved in doing the work that causes the injuries. *Hale v. Peabody Coal Co., supra* 343 N.E.2d at 322. We also note that Jones' instruction No. 5 was tendered in accordance with the Restatement of Torts 2D § 413, comment D; however, comment A of § 413 notes that under the present factual situation § 413 does not apply. The trial court did not err when it rejected this instruction.

### B. Logansport

■■ Jones argues that the trial court erred when it rejected part of his tendered instruction No. 8 because it was a correct statement of the law. Jones has not supported this statement with any authorities. He has waived this issue. AP. 8.3(A)(7).

The trial court rejected Jones' tendered instructions No. 9 and No. 10, which read as follows:

### "INSTRUCTION NO. 9

"I instruct you that if you find from a preponderance of the evidence:

"FIRST: That the City of Logansport owned and maintained high voltage lines passing over and through the work site where plaintiff was employed.

"SECOND: That a crane operated in close proximity to the voltage lines with the potential of reaching the wires at the time of plaintiff's accident for some time prior thereto.

"THIRD: That defendant City of Logansport knew, or should have known, so as to have reasonably anticipated, that an employee, including plaintiff, of a contractor, might come into contact with a dangerous current of electricity in the control of defendant City of Logansport.

"FOURTH: That the injury of which plaintiff complains was proximately caused by such dangerous instrumentality so owned and controlled by the defendant, City of Logansport.

"FIFTH: That any contact with the dangerous instrumentality was reasonably sure to inflict serious injury.

"SIXTH: That the injury occurred in a way which was reasonably foreseeable as a consequence of the operation of a crane in close proximity to the defendant City's high voltage wires.

"SEVENTH: That either (a) That the dangerous condition was created by a negligent act or omission of the defendant City of Logansport, or (B) The defendant, City of Logansport, had actual

or constructive notice of the dangerous condition in sufficient time prior to the time of the accident so that measures or precautions could have been taken to have prevented injury to the plaintiff, "then if you further find by a fair preponderance of the evidence that the defendant, City of Logansport, failed to take reasonably necessary action to prevent the injury to plaintiff, and further that as a proximate result of this failure, Michael Jones was injured, then you may find the City of Logansport was negligent."

### "INSTRUCTION NO. 10

"I instruct you that if you find from a fair preponderance of the evidence that the City of Logansport as a public utility could have reasonably anticipated that an employee of a contractor of the public utility might come into contact with a dangerous instrumentality maintained by the public utility, and such contact is reasonably sure to inflict serious injury, the public utility should take whatever steps are reasonably necessary to prevent injury to any such employee who is likely to come into contact with the dangerous instrumentality."

 Initially, it must be noted that although some states require the exercise of utmost care by those using high voltage electricity, the standard of care required in Indiana is such care as a person of reasonable prudence would ordinarily use under like conditions and circumstances. *Hedges v. Public Service Company of Indiana, Inc.* (1979), Ind.App., 396 N.E.2d 933, 937; *Petroski v. Northern Indiana Public Service Co.* (1976), 171 Ind.App. 14, 354 N.E.2d 736, 743 (*trans. denied.*)[14]

 This statement should not be interpreted to mean that Indiana does not recognize that electricity is a dangerous element; this Court has long recognized that electricity is a dangerous element. *Hedges, supra.* This Court has also stated that any

company that engages in the distribution of electrical energy has a common law duty to exercise reasonable care to properly insulate its power lines in places where the general public may come in contact with them. Generally, insulation is not required when the lines are sufficiently isolated so that the general public could not reasonably be anticipated to be dangerously close to the lines, *Id.* As was stated in *Southern Indiana Gas and Electric Co. v. Steinmetz* (1977), Ind.App., 377 N.E.2d 1381, at 1384:

"This means, then, that an electric utility will not generally be required to insulate its wires with a covering or coating to protect only those persons who might come into contact with power lines in the course of their employment as electric utility employees, *Denneau v. Indiana & Michigan Electric Co., supra,* or while cleaning and repairing a sign near power lines, *Jakob v. Gary Railways, Inc., supra* [118 Ind.App. 13, 70 N.E.2d 753], or while installing a TV antenna on private property. *Northern Indiana Public Service Co. v. Howard* (1957), 127 Ind.App. 488, 139 N.E.2d 558. An exception is made to this rule, however, when the utility knows or has knowledge of such facts from which it should know that a particular segment of the population will be regularly exposed to uninsulated wires for one reason or another, particularly when children are involved. *Petroski v. Northern Indiana Public Service Co., supra* (boy climbing tree); *Wise v. Southern Indiana Gas & Electric Co.* (1941), 109 Ind.App. 681, 34 N.E.2d 975 (boy climbing bridge with sagging power line nearby); *Fort Wayne and Northern Indiana Traction Company v. Stark* (1920), 74 Ind.App. 669, 127 N.E. 460 (boy climbing tree)."

Apparently Jones argues that he belonged to the particular segment of the population, construction workers at the construction site, that was regularly exposed to the uninsulated wires and that Logansport knew or should have known this; therefore, Logansport, as a utility, owed him a duty to

---

**14.** Jones' list of cases in support of his position are distinguishable. The foreign cases he cites are from jurisdictions which impose the highest degree of care as their standard.

attempt to insulate its wires with some sort of protective covering.

 While we agree with Jones' statement of the law, we do not find Jones within the exception because there is no evidence that the City of Logansport knew or should have known that the construction workers were being exposed to the uninsulated wires. Jones attempted to impute this knowledge to Logansport through its agent; however, the agent of Logansport, a Clyde E. Williams and Associates' employee, was not concerned with safety (see issue I. Summary Judgment, *supra*). An agent's knowledge will be imputed to the principal only when the matter is within the scope of the agent's authority and with reference to matters over which the agent's authority extends. *Conrad v. Olds* (1941), 110 Ind. App. 208, 37 N.E.2d 297, 303. The trial court properly refused these instructions.

Judgment affirmed in part; reversed and remanded in part.

GARRARD, J., concurs.

HOFFMAN, P. J., concurs in result.