100 CENTER DEVELOPMENT COMPA-
NY, Defendant–Appellant,

v.

HACIENDA MEXICAN RESTAURANT,
INC., Plaintiff–Appellee.

No. 20A03–8902–CV–28.

Court of Appeals of Indiana,
Third District.

Dec. 5, 1989.

Rehearing Denied Feb. 20, 1990.

---

F. Richard Kramer, Rebecca Hoyt Fischer, Kramer, Butler, Simeri, Konopa & Laderer, South Bend, for defendant-appellant.

Joseph L. Amaral, Hammerschmidt, Bonewitz, Amaral & Jonas, South Bend, for plaintiff-appellee.

GARRARD, Presiding Judge.

100 Center Development Company (100 Center) appeals the grant of summary judgment and order by the Elkhart Circuit Court enjoining 100 Center from constructing a new retail building in its parking lot. 100 Center presents a single issue: Whether construction of a proposed building would reduce the parking area so as to require 100 Center to obtain the written consent of Hacienda Mexican Restaurant, Inc. (Hacienda) to that reduction.

We affirm.

### Facts and Procedural History

100 Center is a shopping center. Hacienda's restaurant is located in a separate building within the center complex and shares the shopping center's parking areas. 100 Center and Hacienda first entered into a lease in 1978. In April, 1983, they entered into a renegotiated, fifteen-year lease. As a result of this new lease, Hacienda was able to more than double the restaurant's capacity. The new lease also provided that 100 Center obtain Hacienda's written consent before it reduced the "present parking area." Parking was defined by a map designated Exhibit B and attached to the lease.

In July, 1987, 100 Center, without obtaining consent, proposed the construction of a new building with four retail spaces. On July 24, 1987, Hacienda sought to enjoin the construction. On July 28, 1987, the St. Joseph County Superior Court granted a preliminary injunction and venued the action to the Elkhart Circuit Court. Both Hacienda and 100 Center moved for summary judgment. Pursuant to Indiana Rules of Procedure, Trial Rule 65(A), Hacienda caused to be filed a certified copy of the proceedings held on July 28, 1987 in the St. Joseph Superior Court in support of its motion. After a hearing on April 14, 1988, the trial court granted Hacienda's motion and entered the following order:

Court having heretofore taken under advisement Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment and having reviewed the Memorandum and transcript herein filed, now grants the Plaintiff's Motion for Summary Judgment and enjoins the Defendant, his heirs, successors, assigns, servants, agents, employees, attorneys, and all other persons acting in concert or participation with him from (1) constructing an area or buildings on any parking lot or parking area of the 100 Center in Mishawaka, Indiana, in the present parking areas used by the customers of the Plaintiff; (2) in any way impeding or prohibiting the use of the present parking areas located in the 100 Center in Mishawaka, Indiana, by the customers of the Plaintiff; (3) in any way causing damage to the parking areas used by the customers of the Plaintiff; and (4) in any way reducing the present parking area of the customers of the Plaintiff at the 100 Center in Mishawaka, Indiana, during the term of the lease between the parties or any extension or renewals thereof.

### Discussion and Decision

The dispute centers around the last sentence of § 4.02 of the lease, which states, "Not withstanding the above, Lessor agrees not to reduce the present parking area without the prior written consent of the Lessee." Hacienda argues that "present parking area" refers to the geographical location of the parking area at the time the lease was entered into. There

being no dispute that construction of the new building would reduce that geographical area, summary judgment in favor of Hacienda would therefore be proper. 100 Center, on the other hand, argues that "present parking area" refers to the number of parking spaces available for use by Hacienda customers at the time the lease was signed. 100 Center argues that although construction will eliminate spaces, addition of other spaces since the inception of the lease will produce a net gain in parking space available to Hacienda customers. It argues that since there is at minimum a factual dispute as to whether the parking area has stayed the same, decreased, or increased, summary judgment would be improper. Thus the term "present parking area" seems subject to two reasonable interpretations, one involving geography, the other geometry.[1]

▮▮▮▮ The meaning of an instrument is a matter for the court to decide as a question of law unless the terms of the instrument are ambiguous. *Fort Wayne Cablevision v. Indiana and Michigan Electric Co.* (1983), Ind.App., 443 N.E.2d 863, 867. A contract is ambiguous if reasonable people would find the contract subject to more than one interpretation. *Fort Wayne Cablevision, supra,* at 866; *Huntington Mutual Insurance Co. v. Walker* (1979), 181 Ind.App. 618, 622, 392 N.E.2d 1182, 1185. In determining whether the instrument is ambiguous, the court may not consider individual clauses without reference to the whole instrument. *Evansville–Vanderburgh School Corp. v. Moll* (1976), 264 Ind. 356, 363, 344 N.E.2d 831, 837; *Keystone Square v. Marsh Supermarkets* (1984), Ind.App., 459 N.E.2d 420, 422; *Ogilvie v. Steele by Steele* (1983), Ind.App., 452 N.E.2d 167; *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1143; *Hauck v. Second National Bank of Richmond* (1972), 153 Ind.App. 245, 260, 286 N.E.2d 852, 861. Even when an ambiguity is apparent, the instrument is not deemed ambiguous until the four corners of the instrument have been searched to ascertain

whether it affords a clear understanding of what the parties intended. *Evansville–Vanderburgh School Corp. v. Moll, supra,* 264 Ind. at 363, 344 N.E.2d at 837; *Hauck v. Second National Bank of Richmond, supra,* 153 Ind.App. at 260, 286 N.E.2d at 861.

▮▮ A review of the instrument is therefore in order. Section 1.02 of the lease provides that

> [U]se ... of the leased premises ... include[s] the use ... of the common areas, employees' parking areas, service roads, and customer car parking areas, *shown and depicted on Exhibit B* [a map of the area] attached hereto ... *and other facilities as may be designated* from time to time by the Lessor...."

(emphasis added).

Section 4.01 provides for the control by 100 Center of the common areas described in § 1.02 and is reprinted in full.

## PARKING AND COMMON USE AREAS AND FACILITIES

SECTION 4.01. Control of Common Areas by Owner.

> All automobile parking areas, driveways, entrances and exits thereto, and other facilities furnished by Lessor in or near the 100 Center, including employee parking areas, the truck way or ways, and other areas and improvements provided by Lessor for the general use, in common, of lessees, their officers, agents, employees and customers, shall at all times be subject to the exclusive control and management of Lessor, and Lessor shall have the right from time to time to establish, modify and enforce reasonable rules and regulations with respect to all facilities and areas mentioned in this Article. Lessor shall have the right to construct, maintain and operate lighting facilities on all said areas and improvements; to police the same; *from time to time to change the areas, level, location and arrangement of parking*

---

**1.** The dispute here involves a "semantic ambiguity." Semantic ambiguities exist because words have multiple dictionary meanings independent of context. The context in which the word appears can, however, resolve the ambi-

guity. Dickerson, *The Diseases of Legislative Language,* 1 Harvard Journal on Legislation 5 (1964), *reprinted in* Dickerson, *Materials on Legal Drafting* 55 (West, 1981).

*areas and other facilities hereinabove referred to;* to restrict parking by lessees, their officers, agents and employees to employee parking areas; to close all or any portion of said areas or facilities to such extent as may, in the opinion of Lessor's counsel, be legally sufficient to prevent a dedication thereof or the accrual of any rights to any person or the public therein; to close temporarily all or any portion of the parking areas or facilities; to discourage non-customer parking; and to do and perform such other acts in and to said areas and improvements as, in the use of good business judgment, the Lessor shall determine to be advisable with a view to the improvement of the convenience and use thereof by Lessees, their officers, agents, employees and customers. Lessor will operate and maintain the common facilities referred to above in such manner as Lessor, in its sole discretion, shall determine from time to time. Without limiting the scope of such discretion, Lessor shall have the full right and authority to employ all personnel and to make all rules and regulations pertaining to and necessary for the proper operation and maintenance of the common areas and facilities. (emphasis added).

Finally, § 4.02 provides as follows:

All common areas and facilities not within the leased premises, which Lessee may be permitted to use and occupy, are to be used and occupied under a revocable license, and if the amount of such areas be diminished, Lessor shall not be subject to any liability nor shall Lessee be entitled to any compensation or diminution or abatement of base rent, nor shall such diminution of such areas be deemed constructive or actual eviction. *Not withstanding the above, Lessor agrees not to reduce the present parking area without the prior written consent of the Lessee.* (emphasis added).

The lease clearly provides that Hacienda and customers of Hacienda may use all of the common areas in 100 Center. The lease just as clearly provides that except for reducing the parking area, 100 Center has complete administrative control over the common areas. Pursuant to § 4.01, 100 Center may open and close entrances and exits to the parking lot, install lights, employ security patrols, control the traffic, designate handicapped spaces, paint lines on the pavement, etc. It may enlarge individual parking spaces, thus reducing their number. If, as 100 Center maintains, the term "present parking area" means the number of spaces, 100 Center would have to seek Hacienda's written permission each time a change in the configuration of the parking spaces reduced their number. 100 Center would not likely have intended that result when it entered into the lease. Such an interpretation would seriously limit 100 Center's control over the common areas and render much of § 4.01 meaningless.

A court must accept the interpretation that harmonizes the provisions of an instrument. *Evansville–Vanderburgh School Corp. v. Moll, supra; Jones v. City of Logansport, supra,* 436 N.E.2d at 1143. The words of the instrument are given their usual and common meaning. *Romain v. A. Howard Wholesale Co.* (1987), Ind.App., 506 N.E.2d 1124, 1126; *Ogilvie v. Steele by Steele, supra,* 452 N.E.2d at 167; *Fort Wayne Cablevision, supra,* 443 N.E.2d at 865. By giving the words of this lease their usual meanings and harmonizing the provisions of this lease, we conclude the parties intended to require that 100 Center obtain Hacienda's written consent before it could permanently close any of the parking area used as parking at the time the lease was signed. Had 100 Center intended a different result, it could have used a different term, such as "parking spaces" instead of "parking area."

While § 1.02 provides some support for 100 Center's interpretation by allowing Hacienda use of other common areas designated in the future, such a result would mean that ultimately 100 Center could construct new buildings in all of its parking areas so long as it maintained the original number of parking spaces, no matter how distant. Such an interpretation would not conform to the usual interpretation reasonable people would give the words of the instrument and would conflict with other sections of

the lease, namely § 3.03 requiring Hacienda to operate so as to maximize gross sales.

We find that the contract is not ambiguous. The trial court also found that there were no genuine issues of material fact. 100 Center in its brief, however, asserts that the construction of the proposed building "would not alter the configuration of the parking areas" as they were depicted on the map attached to the lease. (Appellant's Brief, p. 15). In ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the non-moving party, 100 Center, *R.R. Donnelley and Sons v. Henry–Williams, Inc.* (1981), Ind.App., 422 N.E.2d 353. Both Hacienda and 100 Center submitted maps showing the location of the proposed retail space. In addition, Defendant's Exhibit A was entered and shows where the proposed building would be located on the map attached to Plaintiff's Exhibit 1, the April, 1983 lease agreement. All maps indicate that at least part of the proposed building would be located in the parking lot existing in April, 1983. The trial court is not required to ignore undisputed evidence. Here the evidence clearly shows that the proposed construction would eliminate part of the parking lot. We conclude that as a matter of law, Hacienda is entitled to judgment in its favor.

Even if we were to find that the contract is ambiguous, we would conclude nevertheless that summary judgment was proper. Any ambiguity in this lease arose because of the language in the lease and not because of extrinsic facts. Therefore, its construction is a question of law for the court. *Meridian Mutual Ins. Co. v. Richie* (1988), Ind.App., 517 N.E.2d 1265, 1266, *vacated* (1989), Ind., 540 N.E.2d 27, *reh'g. granted and decision reinstated* (1989), Ind., 544 N.E.2d 488; *Jones v. City of Logansport, supra,* at 1144; *R.R. Donnelley & Sons v. Henry–Williams, Inc., supra,* at 356. An ambiguity is strictly construed against the party that prepared the instrument. *Rieth–Riley Construction v. Auto–Owners Mutual Insurance* (1980), Ind.App., 408 N.E.2d 640, 645; *Tarrant v. Self* (1979), 180 Ind.App. 215, 221, 387 N.E.2d 1349,

1353. We, therefore, construe the lease strictly and do not adopt the interpretation urged by 100 Center.

Affirmed.

STATON and CONOVER, JJ., concur.