**BOROVILOS RESTAURANT
CORPORATION II,**
Appellant–Plaintiff,

v.

**LUTHERAN UNIVERSITY
ASSOCIATION, INC.,**
Appellee–Defendant.

No. 64A05–0909–CV–493.

Court of Appeals of Indiana.

Feb. 1, 2010.

Stephen Bower, Thiros and Stracci, P.C., Merrillville, IN, Attorney for Appellant.

William H. Wagner, John E. Hughes, Kevin G. Kerr, Valparaiso, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Borovilos Restaurant Corporation II ("Borovilos") appeals the trial court's order on its complaint against Lutheran University Association, Inc. ("Valparaiso University") for a preliminary injunction, declaratory judgment, and damages.

We affirm.

*ISSUES*

1. Whether the trial court's order must be reversed because it fails to acknowledge Borovilos' legal easement rights.

2. Whether we should remand for a determination of monetary damages.

*FACTS*

In 1969, Andrew and Doris Barboul

("owner"[1]) leased a parcel of land ("the parcel") to Elmer and Shirley Wiesjahn ("Wiesjahns"). The parcel abuts U.S. 30 on its southern edge and Sturdy Road on its western edge. The lease included a prohibition against assignment or subletting "without first obtaining the written consent of the owners." (Borovilos App. 31).

A Big Boy restaurant was being operated on the western portion of the parcel, and on December 1, 1989, the Wiesjahns entered into a sublease with Kenneth Blaney ("Blaney") whereby Blaney would sublease the eastern portion of the parcel for the operation of Kelsey's Steak House ("Kelsey Parcel"). The Wiesjahn–Blaney sublease included a section which provided that the subleasing restaurants granted to each other the right to freely use the common areas of the parcel for ingress and egress and parking of customers' vehicles. The Wiesjahn–Blaney sublease also included the signature of the trustee of the owner giving the "consent of owner in primary lease" to sublease to Blaney (Kelsey Parcel). *Id.* at 30.

On October 31, 1994, the Wiesjahns and Broadway Cafe on 30 ("Broadway"), formerly Big Boy,[2] executed a sublease for the western portion of the parcel ("Broadway Parcel"). The sublease referred to Blaney's lease of the eastern portion of the parcel and his operation of Kelsey's Steak House thereon. Provisions within the Wiesjahn–Broadway sublease provided for the use by both restaurants of the common and parking areas, service roads, sewer and water lines, sidewalks, and egress and ingress to and from Sturdy Road and U.S. 30. It specified that "all of the common areas" of the Broadway Parcel and the Kelsey Parcel were shown on an attached August 1994 diagram. (Borovilos App. 52). The Weisjahn–Broadway sublease was signed by the parcel's owner, indicating that the owner had consented to the sublease to the subtenant. The sublease was also signed by Blaney "as to the provisions" for use of common areas, etc. *Id.*

Also on October 31, 1994, the Wiesjahns and Broadway executed a "Memorandum of Sublease" memorializing the foregoing sublease agreement. Blaney and Broadway also executed a "Memorandum of Reciprocal Rights" on October 31, 1994. Both documents were recorded on December 8, 1994. The "Memorandum of Reciprocal Rights" stated that Broadway and Blaney had each "grant[ed]" to the other, and the other's "successors and assigns," a "right and easement for use" for parking and utility lines, which "rights and easements ... shall run with the land...." (*Id.* at 91, 92, 94).

In January of 1999, Broadway entered into a sub-sublease agreement with Borovilos. The Broadway–Borovilos sub-sublease noted Blaney's sublease of the Kelsey Parcel and provided that Borovilos' "use and occupancy" of the Broadway Parcel "shall include use in common with others entitled hereto of the common areas, parking areas, service roads, sewer lines, water lines, and sidewalks, and egress and ingress to and from ... [Sturdy Road] and U.S. 30." (Borovilos App. 63). It further provided that Blaney and Broadway would have "unrestricted use of the others designed [sic] as common area for the uses" as set out above, and that the sub-sublease was "subject to the Memorandum of Re-

---

1. The Barbouls' jointly owned parcel apparently passed to the survivor, Mrs. Barboul, who in 1979 assigned her ownership to a trust, which was thereafter represented by its trustee, Dorothy Risto.

2. Apparently Big Boy ceased operation.

ciprocal Rights" of October 31, 1994, between Broadway and Blaney. *Id.* at 65. The sub-sublease was signed by Broadway and Borovilos.[3] This sub-sublease stated that the owner's execution of the sub-sublease acknowledged the owner's consent "to the further Subleasing to the Second Subtenant," and it was signed by the owner of the parcel. *Id.* at 68. The sub-sublease stated that the Wiesjahns' consent was required; they signed, giving their "consent to the further sublease to" Borovilos. *Id.* at 78.

In April of 2005, the parcel was conveyed by deed[4] to Valparaiso University. In November of 2005, Kelsey's Steak House ceased operating the restaurant on the Kelsey Parcel, and all of the fixtures were removed from the building. The building then had holes in the roof, leaking gas valves, and exposed electrical wiring. These safety hazards prompted Valparaiso University to plan the demolition of the building and erect fencing around it. The fencing closed off some of the parking areas on the eastern side of the Kelsey Parcel.

On December 15, 2006, Borovilos filed a complaint seeking a preliminary injunction to maintain the status quo and a declaratory judgment defining "the parties' rights under the" various leases and subleases. (Borovilos App. 26). The trial court heard evidence on the issue of a preliminary injunction on February 27, 2007, and it visited the property on March 7, 2007. On March 29, 2007, the trial court granted a preliminary injunction allowing Borovilos customers and employees to continue using "any parking spaces on the Kelsey's

parcel, except those" within the fenced off area. *Id.* at 11.

Borovilos appealed, arguing that the trial court erred by imposing a preliminary injunction which limited the scope of the parking areas to less than those shown on the August 1994 diagram. We found that the trial court had not abused its discretion by limiting the scope of the preliminary injunction, and remanded the case for further consideration on the merits. *Borovilos Restaurant Corp. v. Lutheran University Ass'n.,* No. 64A03–0704–CV–170, 877 N.E.2d 1257 (Ind.Ct.App. Dec. 21, 2007) ("*Borovilos I* ").

On May 28, 2008, Borovilos filed an amended complaint, adding "a second count of complaint seeking damages for the interference of its easement rights by" Valparaiso University. (Bovorilos Br. at 3). The amended complaint is not included in the record before us, but when the trial commenced on January 29, 2009, Borovilos requested an order declaring its "right to use any and all of the parking spots" shown on the August 1994 diagram and "damages that [it] had incurred as a result of the interference with [its] easement rights and the impact that it's had on … business at the cafe." (Tr. 6). The trial court took judicial notice of the testimony and evidence presented at the preliminary injunction hearing; admitted the deposition of Blaney as evidence;[5] and received testimony from witnesses.

On July 22, 2009, the trial court issued its order. The trial court noted Borovilos' argument that the Memorandum of Reciprocal Rights between Broadway and Blaney, "affirmed by a predecessor owner of

---

**3.** The Broadway–Borovilos sub-sublease does not appear to have been signed by Blaney.

**4.** The conveyance appears to have been from the estate of the beneficiary of the Barboul Trust.

**5.** The Blaney deposition was not included in the submission to us of the transcript and evidence admitted at trial.

the University," gave it "the right to use the parking area on both parcels." (Borovilos App. 17). The trial court, however, found that "the language of the sub-lease limited the effect of the owner's signature to the consent to assignment and the validity of the lease and some default language." *Id.* It further found that

> [n]o where did the previous owner of the parcel ... grant Borovilos or any of his predecessors any sort of easement. The Memorandum of Reciprocal Rights on which Borovilos relies was made between two tenants, Kenneth Blaney and Borovilos' predecessor, Broadway Cafe on 30, Inc. Once Blaney moved Kelsey's Steak House from that location that Memorandum of Reciprocal Rights became a nullity. The Kelsey's parcel is no longer occupied by any tenant. It is owned by the University, which is also Borovilos' landlord.

*Id.* at 18. The trial court also noted that Valparaiso University had "stipulated" that it would

> allow Borovilos, during the remaining terms of his lease, to retain the access which currently exists from Route 30 and Sturdy Road to the Broadway parcel as it presently exists and additionally will allow Borovilos to use the parking that was allowed by this Court under the temporary injunction previously issued.

*Id.* Accordingly, the trial court so ordered, and it denied Borovilos' "claim for trespass." *Id.* The trial court further held that Borovilos had failed to prove that its loss of profits in 2007–2008 "was due to" either "the parking situation" or the violation of an easement right. *Id.* at 19.

### DECISION

As the trial court's order noted, the parties did not request findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). Hence, to the extent that its judgment order contains findings and conclusions, such were entered sua sponte. Findings of fact entered by the trial court sua sponte

> control only as to the issues they cover, while a general judgment standard applies to any issue upon which the trial court has made no findings. In reviewing the judgment, this court must determine whether the evidence supports the findings and whether the findings, in turn, support the conclusion and judgment. We will reverse a judgment only when it is shown to be clearly erroneous, *i.e.,* when the judgment is unsupported by the findings of fact and conclusions entered on the findings. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. In the case of a general judgment, a general judgment may be affirmed on any theory supported by the evidence presented at trial.

*Coffman v. Olson & Co.,* 906 N.E.2d 201, 206 (Ind.Ct.App.2009) (citing *Dewbrew v. Dewbrew,* 849 N.E.2d 636, 640 (Ind.Ct. App.2006)), *trans. denied.*

Moreover, as the plaintiff, Borovilos bore the burden of proving its claims that Valparaiso University was interfering with its right to use parking areas on the Kelsey Parcel consistent with the August 1994 diagram, and for damages sustained by the interference with those rights. Accordingly, it appeals from a negative judgment, and must

demonstrate that the trial court's judgment is contrary to law. A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. In conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences.

*Infinity Products, Inc. v. Quandt,* 810 N.E.2d 1028, 1031–32 (Ind.2004).

### 1. *Existence of an Easement*

 An easement is the right to use the land of another. *Drees Co. v. Thompson,* 868 N.E.2d 32, 41 (Ind.Ct.App. 2007), *trans. denied.* "An easement implies an interest in the land, which is ordinarily created by a grant in a deed, and is often permanent." *Jones v. Nichols,* 765 N.E.2d 153, 158 (Ind.Ct.App.2002), *trans. denied.* The nature, extent and duration of an easement created by an express agreement or by grant in a deed must be determined by the provisions of the instrument creating the easement. *Larry Mayes Sales, Inc. v. HSI,* 744 N.E.2d 970, 972 (Ind.Ct.Ap.2001) (citation omitted). An easement is "normally held in fee." *Id.* In construing an alleged creation of an easement, "no particular words are necessary; any words which clearly show the intention to give an easement are sufficient." *Id.* at 973.

 We note that Borovilos cites to the common law for examining the "language of covenants in deeds," and "the terms of the deed." Borovilos Br. at 13. However, in the case at bar, it directs us to no language in a *deed* that purports to create an easement in favor of Borovilos.

Borovilos then contends that its easement in the Kelsey Parcel is "clearly defined by the parties," in "one document ... involving this property," to wit: the October 1994 Wiesjahn–Broadway sublease agreement providing for "the two sub-lessees[']" use of common and parking areas, etc. *Id.* at 13, 14. Borovilos points out that "various subleases talk about the use of the property by two restaurants," and "show mutual easements and agreement between the two restaurant operators." *Id.* at 15. However, Borovilos cites no authority for the proposition that an agreement between sub-lessees creates an interest in the land that is owned in fee simple by another, or that the agreement of sub-lessees can diminish the owner's fee simple title to the land.

Borovilos further asserts that "when" Valparaiso University "purchased" the parcel, it had been "informed" by the Ticor Title Insurance policy that the Borovilos "easement rights" appeared "in the chain of title." *Id.* To the contention that the title policy gave Valparaiso University "notice" of an easement, *id.* at 17, we note that Valparaiso University purchased the parcel on August 4, 2005, and the purchase was recorded on August 22, 2005 but the title insurance policy cited to by Borovilos was issued on March 8, 2006. A "chain of title" is defined as "the ownership history of a piece of land, from its first owner to the present one." Black's Law Dictionary 244 (8th ed.2004). "Ownership" is the "bundle of rights allowing one to use, manage, and enjoy the property, including the right to convey it to others." *Id.* at 1138. Absent any authority to that effect, we cannot accept the implicit contention of Borovilos that the recording of the "Memorandum of Reciprocal Rights" between Blaney and Broadway, or the recording of the memorandum memorializing the Wiesjahn–Broadway sublease, established as a matter of law an easement that diminished the owners's fee simple title to the parcel.

Finally, we note the that inasmuch as (1) a person "may not have an interest in his or her own land because an easement merges with the title," and (2) "while both are under the same ownership the easement does not constitute a separate estate," there can be no easement "so long as there is a unity of ownership of the properties involved." 25 Am.Jur. 2d *Easements and Licenses* § 1 (2004). Thus, that the parcel in question was at all times held by a single owner precludes there being an easement.

Borovilos also argues that "one look at the premises" before Valparaiso University purchased the parcel "would have disclosed the joint use of the access, parking and utilities," which "is sufficient to put a purchaser upon inquiry and means of knowledge" to ascertain whether an easement existed—by "mak[ing] due inquiry." *Id.* at 17, 18. This argument *assumes* the inquiry would have disclosed the existence of a valid easement, but it does not *establish* that a valid easement indeed existed.

In addition, Borovilos argues that *Borovilos I* "found there was an easement right in the Broadway Cafe," which is "law of the case." Borovilos Br. at 18. We disagree. The only issue in *Borovilos I* was "whether the trial court erred by imposing a preliminary injunction with a smaller scope than requested by Broadway Cafe." *Id.* at * 5. We affirmed the "preliminary injunction" that "temporarily fr[o]ze all actions regarding the Kelsey parcel" until "the merits of the case were tried." *Id.* at 8.

Finally, Borovilos cites to *100 Center Dev. Co. v. Hacienda Mexican Restaurant, Inc.,* 546 N.E.2d 1256 (Ind.Ct.App. 1989), as support for the proposition that its easement rights were created by the August 1994 diagram and consent by the owner to the October 1994 Wiesjahn–Broadway sublease. However, we find *100 Center* distinguishable from the facts and circumstances presented to the trial court here. In *100 Center,* Hacienda sought to enjoin 100 Center from constructing a new retail building in its parking lot. The lease between 100 Center, the owner/lessor, and Hacienda, the lessee, provided: "Lessor agrees not to reduce the present parking area without the prior written consent of the Lessee." *Id.* at 1259. We found that this contractual language evidenced that "the parties intended to require that 100 Center obtain Hacienda's written consent before it could permanently close any of the parking area used as parking at the time the lease was signed." *Id.*

Here, the language at issue appears in the October 1994 sublease, which includes agreements between the subtenant therein (Broadway), and the subtenant pursuant to another sublease (Blaney); and the owner's signature appears only as evidence of the owner's consent to the Wiesjahns' subleasing to Broadway as a subtenant. The owner's consent provision makes no reference to the sublease provisions for shared parking, etc. or the subtenants' mutual agreements in that regard. Accordingly, we find *100 Center* inapposite.

2. *Damages*

As a second issue, Borovilos asserts that if the record shows that it had "easements that were violated," we should remand the matter "for a determination of [its] remedies." Borovilos Br. at 22. However, we find that the record does not establish that Borovilos held easement rights in the parcel purchased by Valparaiso University. Therefore, no remand in this regard is warranted.

Affirmed.

KIRSCH, J., and MAY, J., concur.