Richard LEWIS and RAL Engineering and Construction Corporation, Appellants,

v.

Paul LOCKARD and Dana Joyce Lockard, Appellees,

Richard Allen Corporation, Fox Chase Homeowners Association, Inc., Terry Arnett and Jerry Arnett, d/b/a Northside Landscaping and Excavating, Inc., Non-Participating Parties.

No. 30A01–8605–CV–133.

Court of Appeals of Indiana, First District.

Oct. 27, 1986.

Rehearings Denied Dec. 4, 5, 1986.

Bernard L. Pylitt, Dann, Pecar, Newman, Talesnick & Kleimann, P.C., Indianapolis, for Richard Lewis.

William M. Osborn, Osborn & Hiner, Indianapolis, George B. Davis, Davis & Davis, Greenfield, for RAL Engineering and Const. Corp.

William D. Hall, Indianapolis, for appellees.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellants, Richard Lewis (Lewis) and RAL Engineering and Construction Corporation (RAL), appeal the decision of the Hancock Superior Court, which ruled in favor of plaintiff-appellees, Paul and Dana Lockard, holding that the Lockard's exclusive remedy was not limited to Indiana's Workmen's Compensation Act. The Lockards, as cross-appellants, appeal the trial court's ruling in favor of Lewis and RAL, cross-appellees, regarding Lewis' and RAL's alleged liability as a matter of law for injuries sustained by Paul Lockard. Both rulings were in response to motions for partial summary judgment filed by both parties.

### STATEMENT OF THE FACTS

Lewis is the president of RAL, and he owned 100% of RAL and Richard Allen Corporation (RAC). Lewis, RAL, and RAC were involved in a construction operation known as the Fox Chase Housing Project. Lewis was acting as owner and the duly licensed engineer, surveyor, and inspector of the housing project; and through RAL, he was acting as the prime contractor.

Lewis and RAL, as owners of the property, applied for and obtained several permits which enabled the construction of homes and gave permission to construct and connect sewer lines from the housing project to the public sewer system. Northside Landscaping and Excavating, Inc. (Northside) was the subcontractor hired by Lewis and RAL to install a sewer main in the housing project. Paul Lockard was an employee of Northside. On April 28, 1984, Northside was digging a trench for sewer pipe when the trench caved in on Mr. Lockard and injured him.

Northside had no insurance at the time of the accident, and Lewis and RAL had never extracted from Northside a certificate from the industrial board showing compliance with the insurance provisions of Indiana's Workmen's Compensation Act. The Lockards filed this suit against Lewis and RAL as negligent third parties.

### ISSUES

Lewis and RAL present the following issue dispositive of their appeal:

Did the trial court err in sustaining Paragraph I of the Lockards' Motion for Partial Summary Judgment which claimed that their cause of action was not barred by the statutory employer section, IND. CODE 22-3-2-14, and the exclusive remedy section, IND.CODE 22-3-2-6, of the Indiana Workmen's Compensation Act because there was evidence invoking those sections?

In their cross-appeal, the Lockards present the following issue:

Did the trial court err in overruling Paragraph II of the Lockards' Motion for Partial Summary Judgment which claimed they were entitled to judgment of liability as a matter of law with the amount of damages to be determined at a later trial?

### DISCUSSION AND DECISION

ISSUE I: *Statutory Employer/Exclusive Remedy*

In answer to the Lockards' complaint alleging negligence, both Lewis and RAL

alleged that the Lockards' exclusive remedy was under the Indiana Workmen's Compensation Act. In their memorandum in support, Lewis and RAL argued that under IND.CODE 22–3–2–14, they are the "statutory employer" of Mr. Lockard, and as such, IND.CODE 22–3–2–6, the exclusive remedy section of the Act, bars the Lockards' tort cause of action. The Lockards argue that IND.CODE 22–3–2–14 creates only secondary liability in Lewis and RAL for payment, and Lewis and RAL, as third parties, are still subject to a tort cause of action under IND.CODE 22–3–2–13.

On this first issue, Lewis and RAL appeal from the trial court's ruling granting partial summary judgment in favor of the Lockards. A motion for summary judgment will be properly granted where there are no genuine issues of material fact and the law was correctly applied. *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677, *trans. denied.* All doubts and reasonable inferences should be resolved in favor of the opponent. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. However, where the facts are undisputed and only one inference can reasonably be drawn, judgment can be entered as a matter of law. *Hundt v. La Crosse Grain Co.* (1983), Ind., 446 N.E.2d 327. Even when review is based on the grant of a motion for summary judgment, the trial court's judgment will be upheld if it can be sustained on any theory or basis found in the record. *Id.*

In a series of cases, our court has addressed the dispute here regarding an injured employee's alternative remedies. *See Artificial Ice & Cold Storage Co. v. Ryan* (1935), 99 Ind.App. 606, 193 N.E. 710; *Artificial Ice & Cold Storage Co. v. Waltz* (1925), 86 Ind.App. 534, 146 N.E. 826, *trans. denied; In re Waltz* (1923), 79 Ind. App. 298, 138 N.E. 94. The underlying facts in these cases disclose that Artificial Ice and Cold Storage Company (Artificial Ice) contracted with Hugo Wuelfing (Wuelfing) to make certain elevator repairs, and Charles A. Waltz, an employee of Wuelfing, was injured when trying to make the repairs. Artificial Ice did not

extract from Wuelfing a certificate of insurance. The predecessor of IND.CODE 22–3–2–13 was held to expressly preserve the right of an injured employee to maintain an action for damages against a person other than his employer, and the statute did not make an employee of a subcontractor an employee of any other person. *Waltz, supra.* These cases illustrate that under Indiana's prior workmen's compensation statutory scheme, an injured employee was able to proceed under both sections 13 and 14 at the same time. However, the court in *Ryan, supra,* noted that an injured employee, after pursuing each remedy to a final conclusion, was prevented by statute from collecting under both.

■ Our legislature has amended IND. CODE 22–3–2–13 and 14 several times over the years since the Artificial Ice trilogy, but nothing in the current versions of these two provisions prevents an injured employee from proceeding under both, nor do they abrogate the rules enunciated in those cases. When a statute has been judicially construed and is later reenacted in substantially the same terms, the legislature is deemed to have intended the same construction. *City of Portage v. Rogness* (1983), Ind.App., 450 N.E.2d 533, *trans. denied; State v. Dively* (1982), Ind.App., 431 N.E.2d 540, *trans. denied.* The legislature is presumed to be aware of prevailing judicial construction of a statute and when it declines to curtail or deny such construction in subsequent revisions, especially over a long period of time, legislative acquiescence is presumed. *See Ross v. Schubert* (1979), 180 Ind.App. 402, 388 N.E.2d 623, *trans. denied. Cf. Indiana Department of Revneue, Indiana Gross Income Tax Division v. Glendale-Glenbrook Associates* (1981), Ind., 429 N.E.2d 217 (regarding legislative acquiescence in long adhered to administrative interpretation). Further, the specific provision in the prior version of IND.CODE 22–3–2–13 denying collection for both compensation and damages has been replaced by the current statutory scheme which also prevents double recovery through elaborate subrogation

provisions. *See* IND.CODE 22–3–2–13 and 14. These subrogation provisions are consistent with the strong policy within the Act against double recovery by an injured employee for the same injury. *See Indiana State Highway Department v. Robertson* (1985), Ind.App., 482 N.E.2d 495; *Freel v. Foster Forbes Glass Co.* (1983), Ind.App., 449 N.E.2d 1148; *Bebout v. F.L. Mendez & Co.* (1941), 110 Ind.App. 28, 37 N.E.2d 690. In the interests of stability and continuity in the law, we continue to abide by the prevailing judicial and legislative interpretation of IND.CODE 22–3–2–13 and 14 which permits an injured employee to proceed under both workmen's compensation and third party liability in tort.

Lewis and RAL's argument here is essentially premised on the appropriate interpretation and construction of the law. There being no factual disputes presented here and the law is consistent with the trial court's ruling, partial summary judgment was appropriate.

ISSUE II: *Liability As A Matter of Law*

The Lockards' basic argument here is that Lewis and RAL failed to comply with their contracts with the City of Indianapolis and with various federal and state statutes, rules and regulations, all of which impose a nondelegable duty to furnish Mr. Lockard with a safe place to work; and as a result of their noncompliance, Lewis and RAL are negligent as a matter of law. Lewis and RAL counter by arguing there are factual disputes underlying the elements of their alleged negligence, and they also argue several affirmative defenses which they allege preclude summary judgment as a matter of law.

In their motion for partial summary judgment, it was the Lockards' burden to establish the absence of genuine issues as to material facts, and all reasonable inferences to be drawn from the facts presented must be construed in favor of the party opposing the motion. *Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167, *trans. denied; Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, *trans.*

*denied.* Even where facts are undisputed, summary judgment is inappropriate where there is a good faith dispute as to the inferences to be drawn from the evidence before the court. *Four Winns, Inc. v. Cincinnati Insurance Co.* (1984), Ind. App., 471 N.E.2d 1187, *trans. denied.* In order to present the absence or presence of genuine issues, Ind.Rules of Procedure, Trial Rule 56 permits parties to submit affidavits, depositions, admissions, interrogatories and testimony. However, this procedure should not be used as an abbreviated or summary trial. *Jones, supra; Bassett, supra.* This is especially so in negligence cases. Summary judgment is normally an inappropriate vehicle in disposing of issues involving negligence where the facts of the case are subject to more than one reasonable inference or conclusion. *See Hundt, supra; Law, supra; Bassett, supra.* Summary judgment procedure must be applied with extreme caution so that a party's right to the fair determination of a genuine issue is not jeopardized. *Jones, supra.* Improbability of recovery by one party does not justify summary judgment for the other. *Four Winns, Inc., supra.* With these principles in mind, we now turn to the Lockards' claim of liability as a matter of law.

Liability of a general contractor for injuries sustained by an employee of a subcontractor is normally dependent on the general contractor's control over the means or manner of the subcontractor's work, but without such control the general rule is that a general contractor is not liable for injuries to employees of a negligent subcontractor. *Harris v. Kettelhut Construction, Inc.* (1984), Ind.App., 468 N.E.2d 1069, *trans. denied; Hale v. Peabody Coal Co.* (1976), 168 Ind.App. 336, 343 N.E.2d 316. Five exceptions to this general rule were recognized in *Denneau v. Indiana & Michigan Electric Co.* (1971), 150 Ind.App. 615, 277 N.E.2d 8, *trans. denied,* and the Lockards rely on the following two: that a party is by law or contract charged with a specific duty, and that the act to be performed will probably cause injury to others

unless due precaution is taken to avoid harm. The Lockards cite *Maynard v. Flanagin Brothers, Inc.* (1985), Ind.App., 484 N.E.2d 71, which holds that "[p]rime, independent, and subcontractors have the duty to follow regulations concerning worker safety." *Id.* at 75. This holding was admitted by the court in *Maynard* to be contrary to the holdings of *Jones v. Indianapolis Power & Light Co.* (1973), 158 Ind.App. 676, 304 N.E.2d 337, *trans. denied*, and *Hale, supra*, but all cases agree parties can contract for liability to be based on compliance with construction regulations.

The Lockards argue that Lewis and RAL contracted to comply with all federal and state laws, codes, rules and regulations, including those related to worker safety. Lewis and RAL do not specifically deny this contract. However, we need not address the effect of this alleged contract or its specific provisions, nor must we address the effect of the myriad of alleged statutory and regulatory violations asserted by the Lockards. For even if we assume Lewis and RAL are charged with specific duties by virtue of a contract, the Lockards are not entitled to summary judgment as a matter of law.

The issue of liability here is not whether or not a statute or regulation was violated, but whether or not there was negligence. *Davison v. Williams* (1968), 251 Ind. 448, 242 N.E.2d 101. Our supreme court has been clear in holding that the better rule in negligence cases alleging violation of a safety regulation is that proof of a violation creates a rebuttable presumption of negligence. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613; *Davison, supra*. The Lockards even concede in their brief that *Jones*, 436 N.E.2d 1138, rules that regulations are relevant as contract terms setting forth an agreed upon standard of safety, the violation of which is factual evidence of negligence. The case does not hold that violation of a regulation as factual evidence of negligence automatically becomes negligence per se. Even assuming a violation of a statutory duty, a question of fact exists as to whether that violation is the proximate cause of the injury. *Petroski v. Northern Indiana Public Service Co.* (1976), 171 Ind.App. 14, 354 N.E.2d 736, *trans. denied; see Harris, supra*. A jury is free to find that a violation of a statutory duty is not necessarily the direct cause of the injury. *McCall v. Sisson* (1975), 166 Ind.App. 403, 336 N.E.2d 660.

The evidence submitted by the parties in support of their motions for partial summary judgment reveals several conflicting facts and inferences relevant to the issue of proximate cause. Jerry Arnett, owner of Northside, and his brother Terry, an employee, started digging the trench using Northside's own backhoe equipment. They assumed the trench would only need to be 6½—7 feet deep, but because of the terrain and uphill slope of the land at certain points, they were required to dig a deeper trench at these points to maintain a certain depth and grade for the sewer pipe. As a result, a larger crane was leased to do the work. Jerry and Terry had discussed safety alternatives with Lewis, but Lewis implied he did not like either of them. However, he did not direct Jerry and Terry not to take safety precautions. Terry stated he was aware from past experience that inspectors could shut down a job site until appropriate safety measures were provided for workers in the trench. At some point after workers complained of cave-ins in the trench, Jerry and Terry agreed to cut back the sides of the trench, which was done for a certain stretch of the trench.

On the day of the injury, Lewis was on the construction site early in the morning. After he left, several minor cave-ins occurred throughout the day, the exact amount was in wide conflict. Lewis did not appear at the construction site until after Mr. Lockard was injured late in the day when a trench wall where he was working caved in on him. Normally, work proceeded by digging a fifteen-foot trench to enable workers to lay and connect a ten-foot pipe. On this day, Jerry wanted to impress Lewis and dug an extra 65 feet to reach a

certain point by nightfall. Dirt was piled up alongside the trench which had already caved in, and the sides of the trench were not cut back along this stretch. The condition of the soil and resulting strength of the soil trench walls varied along the way. As Jerry dug the trench well beyond the workers, Terry noticed a point in the trench which was not deep enough. Terry directed Jerry to drive the crane over the trench (with its tracks straddling the trench) in order to dig the trench deeper at that point. Mr. Lockard stated he could feel the vibrations of the crane under his feet as he stood in the trench. In his opinion, the water seeping through trench soil and the vibrations from the heavy crane caused the trench to cave in and injure him.

■ At the point Mr. Lockard was injured, he was standing in a portion of the trench which was 10 feet deep. The safety rules the Lockards cite to us requiring that open-cut trenches be sheathed and braced do not state at which specific level these measures should be taken. This is a question for the jury, as well as whether the above and other facts lead to a conclusion that any action or inaction on the part of Lewis and RAL was the proximate cause of Mr. Lockard's injury. Therefore, the Lockards are not entitled to a judgment on this issue as a matter of law, and the trial court was correct in denying this portion of their motion for partial summary judgment.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J. concur.