Sharon A. DAUGHERTY, the Administrator of the Estate of her deceased Husband, Max Thomas Daugherty, Appellant–Plaintiff Below,

v.

FULLER ENGINEERING SERVICE CORPORATION: Big D Crane Service, Inc.: Browning Construction, Inc.: Donald J. Dotlich: Individually and in his capacity as an Officer and Owner of Big D Crane Service, Inc.: William Quinley, Individually and in his capacity as an agent of Browning Construction, Inc.: Lawrence Jett and Frank Fellows, Individually and in their capacities as Employees of Fuller Engineering Service Corporation, Appellees–Defendants Below.

No. 80A02–9301–CV–24.[1]

Court of Appeals of Indiana, Third District.

June 17, 1993.

Transfer Denied Sept. 13, 1993.

Frank J. Price, Gary W. Bippus, Ricos and Price, Indianapolis, for appellant-plaintiff.

Mary Jo Hunter Wedding, Peter A. Schroeder, Norris, Choplin & Schroeder, Indianapolis, for Browning Const., Inc., and William Quinley.

STATON, Judge.

Sharon Daugherty, administratrix of the estate of Max Daugherty, appeals a grant of summary judgment in favor of Browning Construction, Inc. and William Quinley in a wrongful death action. Daugherty presents three issues for our review:

I.   Whether the trial court erroneously concluded that Browning and its employee Quinley owed no duty to Daugherty.
II.  Whether a jury question exists concerning the status of Donald Dotlich as an employee of Browning.
III. Whether certain depositions relied upon by the trial court were unpublished.

We affirm.

On January 13, 1989, Max Daugherty, a glazier for Capitol Building Supplies, was killed when pallets of steel flooring material fell on top of him. The pallets were being moved from the fifth floor to the fourth floor of a construction site at 111 Congressional Boulevard in Hamilton County. The lift of materials was being conducted by Big D. Crane employee Donald Dotlich and Fuller Engineering Service employees Lawrence Jett and Frank Fellows. Browning Construction, Inc. was the general contractor for the construction project.`

On December 20, 1990, Daugherty filed a wrongful death complaint against Fuller Engineering Service Corp., Big D Crane Service, Inc., Browning Construction, Inc., Donald Dotlich, William Quinley (as agent of Browning Construction), Lawrence Jett and Frank Fellows.

Browning Construction and its project manager Quinley moved for summary judgment on the theory that they lacked any duty toward Max Daugherty, an employee of Capitol Building Supplies. On October 20, 1992, the trial court granted the summary judgment motion.

I.

*Duty to Daugherty*

■ Daugherty contends that summary judgment was improperly granted inasmuch as project manager Quinley assumed a duty for Max's safety by making a verbal representation of intent to act to ensure his safety.[2] Fuller Engineering employee Fel-

**2.** Daugherty admits that Browning Construction and Quinley did not contractually assume a

duty of care toward Max Daugherty.

lows testified in his deposition that Quinley made a statement to another Fuller Engineering employee that he would send someone to clear the area where Max was working while the overhead lift of pallets was taking place.[3]

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194, *trans. pending.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

■ As a general rule, a general contractor is under no duty to provide the employee of a subcontractor with a safe place to work. *Lewis v. Lockard* (1986), Ind.App.,

498 N.E.2d 1024, 1027, *reh. denied; trans. denied; McClure v. Strother* (1991), Ind. App., 570 N.E.2d 1319, 1321. However, one in control of land may become liable to an independent contractor if he gratuitously assumes a duty to provide a safe work place or takes control over an instrumentality used by the contractor. *Id.* at 1321–23.

■ One in control of land who does not control the "manner or means" by which a contractor performs does not reserve the control of job site safety so as to render him liable for a contractor's injuries merely because the controller requires compliance with safety rules. *Perry v. NIPSCO* (1982), Ind.App., 433 N.E.2d 44, 48, *reh. denied, trans. denied. See also Teitge v. Remy Const. Co., Inc.* (1988), Ind.App., 526 N.E.2d 1008, 1015 (mere instruction to subcontractor to observe safety practices does not transform one from an "on-site coordinator to an on-site babysitter.")

■ However, responsibility for job site safety may be assumed by conducting safety meetings with employees of contractors and the employment of safety men with "jurisdiction" of the site. *Perry, supra* at 49. *See also Phillips v. United Engineers & Constructors, Inc.* (1986), Ind.App., 500 N.E.2d 1265 (the construction engineer appointed a safety coordinator, held bi-weekly safety meetings for superintendents of contractors, conducted tours of the site noting safety violations and wrote letters to violators concerning remedies for safety problems). One may also assume a duty of care for an independent contractor by maintaining, operating or inspecting the instrumentality used by the independent

---

**3.** The deposition testimony upon which Daugherty relies is as follows:

Fuller: The only instructions that I could remember is that Bill [Quinley] was going to or he was going to send somebody out there to make sure nobody was going to be working underneath where the crane was going to be in operation.
Question: Did he say who he was going to send?
Fuller: No, sir.
Question: A Browning employee, or someone else?
Fuller: He did not say.

Question: Well, do you recall the words that he used?
Fuller: Not to be exact; no, sir.
Question: But he said something to the effect that he was going to send someone to be on the ground to make sure nobody was underneath the crane, is that right?
Fuller: Yes, sir.
Question: Do you know if he ever sent that person?
Fuller: I do not know, because that's the last time I seen Bill.
Record, p. 284.

contractor. *Plan–Tec, Inc. v. Wiggins* (1983), 443 N.E.2d 1212, 1220–21.[4]

Assumption of a duty of care for the safety of an independent contractor has involved an affirmative act or affirmative course of conduct in the foregoing cases. *See also Robinson v. Kinnick* (1989), Ind. App., 548 N.E.2d 1167, *reh. denied, trans. denied* (referencing a "deliberate attempt to control or actively supervise safety at the job site"). However, Daugherty argues that Quinley assumed a duty of care for Max's safety by promising to perform a safety-related action—clearing the area below the hoisting operation—and then failing to do so.

■ Browning Construction and Quinley respond that Quinley's inaction after making a representation constitutes nonfeasance, a complete omission or failure to perform, rather than misfeasance, a negligent performance, and therefore, Daugherty may not predicate liability upon an assumed duty absent reliance by Max. Where nonfeasance is involved in the assumption of a duty undertaken gratuitously or voluntarily, liability may arise only where the beneficiaries have actually relied on the performance. *Plan–Tec, supra* at 1220 (citing *Board of Commissioners of Monroe County v. Hatton* (1981), Ind.App., 427 N.E.2d 696, 700, *trans. denied* ).

■ We agree with Browning Construction and Quinley that nonfeasance was involved in this case. Quinley did not undertake a course of conduct which was negligently performed; rather, he completely failed to perform. Moreover, there is no indication in the record that Max relied upon any representation by Quinley that he would perform a clearance of the work site under the hoisting operation.[5] Thus, Daugherty may not predicate liability upon an assumption of a duty by Quinley.

---

4. Where the instrumentality is that of an independent contractor, liability will ensue only if the complainant can show either that the landowner assumed control of the instrumentality or had superior knowledge of the potential dangers involved in its operation. *Id.* at 1219.

Daugherty has identified no evidence creating a factual question for the jury as to whether Browning Construction and Quinley assumed a duty toward Max, the employee of a subcontractor. Summary judgment was properly entered on this basis in favor of Browning Construction and Quinley.

## II.

### *Employment Status of Dotlich*

Next, Daugherty contends that summary judgment was improperly granted because a genuine issue of material fact exists concerning whether Donald Dotlich (the owner of Big D Crane and the crane operator) was an employee of Browning Construction.

■ A principal who controls or has the right to control the physical conduct of his agent in the performance of a service is a master, upon whom liability for the torts of the agent may be imposed. *Trinity Lutheran Church, Inc. v. Miller* (1983), Ind.App., 451 N.E.2d 1099, 1101–2. In contrast, the employer of an independent contractor is generally not liable for the torts of that contractor. *Hale v. Peabody Coal Company* (1976), 168 Ind.App. 336, 340, 343 N.E.2d 316, 320–21. As a general rule, an independent contractor controls the method and details of his task and is answerable to the principal as to results only. *Crabill v. Livengood* (1967), 142 Ind.App. 624, 231 N.E.2d 854.

■ Whether one employed to perform a task acts as an independent contractor or a servant is generally a question of fact. *Trinity, supra* at 1104; *Dallas Moser Transporters, Inc. v. Ensign* (1992), Ind. App., 594 N.E.2d 454, 457, *reh. denied.* However, where the relevant facts are undisputed, the court will determine whether the employer has the right to control the

---

5. This case is thus distinguishable from *Gunter v. Village Pub* (1993), Ind.App., 606 N.E.2d 1310, cited by Daugherty. In *Gunter,* a bar patron reported to a manager that she had been harassed and threatened by another bar patron. The manager assured Gunter that he would talk to the threatening bar patron; he failed to do so and Gunter was assaulted.

alleged employee by considering several factors: (1) right to discharge; (2) mode of payment; (3) supplying of tools by employer; (4) belief by the parties in the existence of a master-servant relationship; (5) control over the means used or result reached; (6) length of employment; and (7) establishing of work boundaries. *Stone v. Pinkerton Farms, Inc.* (7th Cir.1984), 741 F.2d 941, 943.

■ Daugherty points solely to evidence that Dotlich was paid an hourly rate for the use of his crane, without the existence of a contract for his services. However, the rate paid was not fixed compensation as is typical in an employer/employee relationship; the rate paid varied depending upon which crane was used during the hour. The crane and related equipment belonged to Dotlich, doing business as Big D Crane. Dotlich's services were obtained by Browning Construction on a temporary basis; Dotlich was not regularly employed by Browning Construction. Each subcontractor (including Big D Crane) supervised the performance of the task subcontracted to it. In short, the record herein reveals no indicia of an employer/employee relationship between Browning Construction and Dotlich.

■ Daugherty identifies no evidence which indicates that Browning Construction or Quinley had a right to control Dotlich in the performance of his work. No jury question is presented as to whether Dotlich was an employee of Browning Construction. Summary judgment was properly granted to Browning Construction and Quinley on this basis.[6]

### III.

#### Publication of Depositions

■ Finally, Daugherty complains that certain depositions relied upon by the trial court in granting summary judgment were not filed (and therefore published) in the trial court. Ind.Trial Rule 5(D)(5).

Here, the trial court ordered the publication of depositions by Matthew Springman, Thomas Miller, Scott Wright and Charles Linstrum. However, the complete depositions do not appear as part of the record of proceedings. Excerpts from these depositions (designated by Browning Construction and Quinley in support of their motion for summary judgment) do appear in the record.

The order for summary judgment does not indicate that the trial court relied upon portions of the depositions other than those portions designated and appearing in the record of proceedings in granting summary judgment. We conclude that no reversible error occurred in the inadvertent lack of publication of the entire depositions of Springman, Miller, Wright and Linstrum. The trial court, and this court, are constrained to review only the materials designated in support of and in opposition to a motion for summary judgment.

The grant of summary judgment is affirmed.

CONOVER, J., concurs in result without separate opinion.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I concur as to Issues II and III. I dissent as to Issue I.

Indiana recognizes the gratuitous assumption of duty rule set forth in *Restatement (Second) of Torts* § 324(A) (1965):

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise rea-

---

6. Daugherty makes a cursory argument that Dotlich may have been a "borrowed servant" specially employed by Browning Construction. However, this argument was not raised before the trial court. Matters not designated by the

non-moving party as genuine issues of material fact cannot be argued for the first time on appeal. *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, 1101–2, *reh. denied.*

sonable care to protect his undertaking, if

\*    \*    \*    \*    \*    \*

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

*Perry v. Northern Indiana Public Service Company* (1982) 4th Dist.Ind.App., 433 N.E.2d 44, 50. It is well established that whether a party has assumed a duty and the extent of the duty, if any, are questions for the trier of fact. *Phillips v. United Engineers & Constructors Inc.* (1986) 1st Dist.Ind.App., 500 N.E.2d 1265; *Plan–Tec, Inc. v. Wiggins* (1983) 1st Dist.Ind.App., 443 N.E.2d 1212.

Here, there was deposition testimony that Bill Quinley, an employee of Browning Construction, Inc., affirmatively undertook to make sure that no one would be underneath the area in which the crane was to be performing the dangerous pallet shifting operation. Even if that undertaking and the failure to carry it out be considered nonfeasance as opposed to misfeasance, the question was ripe for jury determination.

In any event, comment (b) to the *Restatement* provision clearly states that liability may arise for failure to exercise reasonable care to complete an undertaking, as well as for the negligent performance of the undertaking.

Even if I were to agree that our case involves nonfeasance, the majority erroneously holds that in such circumstance, the requisite reliance upon the proffered performance must be that of the innocent injured party rather than the reliance of the party to whom the undertaking is extended.

Comment (e) notes that the actor is subject to liability "where the harm is suffered because of the reliance of the other for whom he undertakes to render the services, *or* of the third person himself, upon [the actor's] undertaking." *Restatement, supra,* at 144 (emphasis supplied). Furthermore, Comment on Caveat (f) states:

"Again there is no essential reason why the breach of a promise, relied upon *by the promisee or by a third person*, with resulting physical harm to the latter, should not result in liability in tort." *Restatement, supra,* at 145 (emphasis supplied).

Here, Quinley's promise was made to the Fuller employees for the protection of third persons. The Fuller employees were entitled to rely upon that promise. The resultant injury to Daugherty, the third person, was sufficient to permit the trier of fact to consider application of § 324 A. *Williams v. Saga Enterprises, Inc.* (1990) 225 Cal. App.3d 142, 274 Cal.Rptr. 901; *Keenan v. Miriam Foundation* (1990) Mo.App., 784 S.W.2d 298; *Scott & Fetzer Company v. Montgomery Ward & Company* (1984) 129 Ill.App.3d 1011, 473 N.E.2d 421, *aff'd* (1986) 112 Ill.2d 378, 98 Ill.Dec. 1, 493 N.E.2d 1022.

Although the degree of involvement by Quinley may appear to be less extensive than was present in *Teitge v. Remy Construction Company, Inc.* (1988) 3d Dist. Ind.App., 526 N.E.2d 1008, *Plan–Tec, supra,* and *Phillips, supra,* it is adequate to require the submission of the question to the trier of fact. In the other three cases, the undertaking was general in nature as to such things as conducting safety meetings and safety inspections. Here, the gratuitous undertaking was very specific and left little doubt that it was narrowly focused upon the specific incident which led to Daugherty's death. Accordingly, this undertaking may have been more clear-cut than those in the other three cases. There was evidence from which the jury might have reasonably concluded that Quinley, and through him, Browning Construction, Inc., undertook to clear the area beneath the pallet-lifting site and, having negligently failed to carry out that undertaking, became liable.

The summary judgment as to appellees Quinley and Browning Construction, Inc. should be reversed and the cause remanded for further proceedings.