Victoria S. SLAUBAUGH, Surviving Spouse of Donald K. Slaubaugh, Deceased, Appellant (Plaintiff Below),

v.

WILLIES DEVELOPMENT, INC., Willies Construction Co., and Fireside Homes, Inc., Appellees (Defendants Below).

No. 20A04–9410–CV–413.

Court of Appeals of Indiana, Fourth District.

March 14, 1995.

Publication Ordered Aug. 10, 1995.

Patrick F. O'Leary, Yoder Ainlay Ulmer & Buckingham, Goshen, for appellant.

Arthur S. Surguine, Craig J. Bobay, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for Willies Development, Inc. and Willies Construction Co.

Matthew A. Yeakey, Daniels, Sanders, Pianowski, Hamilton & Todd, Elkhart, for Fireside Homes, Inc.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Plaintiff Victoria S. Slaubaugh (Slaubaugh) appeals from the trial court's grant of the summary judgment motions filed by defendants Fireside Homes (Fireside) and Willies Development, Inc. (Willies).[1]

We affirm.

### ISSUE

Whether the trial court erred in granting summary judgment in favor of Fireside and Willies.

### FACTS

The undisputed facts reveal that Willard R. Miller (Father) is the President of Willies Development, Inc. His son, Timothy A. Miller (Tim), is the President of Fireside Homes. Tim wanted Fireside to build a subdivision of homes; which would be known as Doral Village, in Elkhart County. Father

---

1. Slaubaugh concedes that the entity Willies Construction Co., which was also named as a defendant, is entitled to summary judgment. Appellant's brief at 14.

and Tim entered into a verbal agreement which provided that Willies would purchase a certain parcel of real estate and would provide financing to Fireside for necessary improvements such as paving streets, gas, water, and sewers.

The agreement provided that after the project was subdivided, Willies would transfer title to the land to Fireside. Fireside would then construct homes upon subdivided tracts, and sell the homes to purchasers. The agreement further provided that any profit Fireside realized would be shared with Willies.

Fireside was responsible for all the development planning of the Doral Village project. To that end, Fireside sought bids from excavation companies to install the sewer system. In November of 1990, Tim accepted Elkhart Trenching Company's (Elkhart) bid in a phone conversation with Robert E. Taylor (Taylor), who owned and operated Elkhart.

Tim had no previous experience in development planning and, specifically, had never dealt with sewer excavation. Tim visited the excavation site on two occasions because he enjoyed watching heavy machinery. He did not offer advice to Elkhart, nor did he make any recommendations. Similarly, Father had no experience in sewer trenching, and he merely drove by the site one evening. Father had no contact with Taylor or Elkhart.

On November 12, 1990, the Elkhart trenching crew was preparing a seven or eight foot deep trench, which led away from a manhole, for the installation of a trench box. A trench box is a piece of equipment utilized in excavation work which protects workers from trench wall cave-ins. The first length of sewer pipe was placed in the trench, and Taylor was operating a backhoe to enlarge the trench to accommodate the trench box. Donald Slaubaugh, a member of the Elkhart crew, was in the trench checking on the placement of the sewer pipe, when a portion of the trench wall collapsed, fell onto Slaubaugh's body, and killed him.

On April 5, 1993, Slaubaugh, who is Donald's surviving spouse, filed an amended complaint against Fireside and Willies alleging that both entities "breached their duty under Ind.Code 22-8-4-1 to insure that trench safety systems and procedures under IOSHA 29 C.F.R. Part 1926 Subpart P were procured and implemented to prevent harm to Plaintiff's decedent." R. at 46. Subsequently, Fireside and Willies each filed a motion for summary judgment and supporting materials alleging that neither entity had a duty to provide Slaubaugh with a safe place to work. The trial court agreed, issued a carefully considered order granting summary judgment in favor of Fireside and Willies, and dismissed Slaubaugh's complaint.

## DECISION

Summary judgment is appropriate only when the movant proves there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. When reviewing an entry of summary judgment, we stand in the shoes of the trial court. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Selleck v. Westfield Insurance Company* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied.*

Slaubaugh concedes that as a general rule, a general contractor is under no duty to provide the employee of a subcontractor with a safe place to work. *Daugherty v. Fuller Engineering* (1993), Ind.App., 615 N.E.2d 476, 479, *trans. denied.* However, she points out an exception to this general rule occurs when the general contractor is by law charged with a specific duty to the subcontractor's employee. *Denneau v. Indiana and Michigan Electric Co.* (1971), 150 Ind. App. 615, 277 N.E.2d 8, 12. Slaubaugh argues the language of I.C. 22-8-4-1 "imposes

such a duty" upon Fireside and Willies.[2] Appellant's brief at 16. I.C. 22–8–4–1 provides:

Sec. 1. (a) This section applies to a construction, an improvement, or a maintenance project that may require the creation of a trench of at least five (5) feet in depth.

(b) IOSHA regulations 29 C.F.R. 1926, Subpart P, for trench safety systems shall be incorporated into the contract.

(c) The contract shall provide that the cost for trench safety systems shall be paid for:

(1) as a separate pay item; or

(2) in the pay item of the principal work with which the safety systems are associated.[3]

 The federal safety regulations concerning trench safety are contained in 29 C.F.R. 1926, Subpart P. IOSHA, the Indiana Occupational Safety and Health Act, adopted all federal occupational safety and health standards, including those contained in 29 C.F.R. 1926, Subpart P, as the standards of the Indiana Occupational Safety Standard Commission. Ind.Code 22–8–1.1–13.1; R. at 195. Although it is extremely difficult to discern, we understand Slaubaugh to contend that Fireside and Willies had a duty to insure that the federal trench safety regulations were implemented at the Doral Village site. Appellant's brief at 16. The existence of a duty is generally a question of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995, *reh'g denied.* Summary judgment is appropriate where there is no duty as a matter of law. *Id.* at 998. We need not reach the question of whether the language of I.C. 22–8–4–1 imposes a duty of care upon Fireside and Willies, however, because the federal safety regulations apply to Elkhart, Slaubaugh's employer, as opposed to Fireside, the general contractor.

As Fireside and Willies point out, in *Ramon v. Glenroy Const. Co., Inc.* (1993), Ind.

App., 609 N.E.2d 1123, *trans. denied,* we acknowledged that Indiana adopted the federal occupational safety and health standards as its own pursuant to I.C. 22–8–1.1–13.1. Furthermore, we found that the

[f]ederal standards adopted pursuant to I.C. 22–8–1.1–13.1, IOSHA, have been construed to apply only to the immediate employer of an injured employee. *See e.g. Skidmore v. Travelers Ins. Co.* (E.D.La., 1973), 356 F.Supp. 670, 672, *affirmed,* [5th Cir.] 483 F.2d 67 ... More importantly, IOSHA specifically precludes a private right of action based upon those regulations. I.C. 22–8–1.1–48.1.

*Id.* at 1129. Thus, based in part on these principles, we declined to impose upon a prime contractor a statutory duty to provide a safe work place for the employee of another prime contractor's subcontractor.[4]

Here, Elkhart was Donald Slaubaugh's immediate employer. Thus, the federal safety regulations do not apply to Fireside, the general contractor. Accordingly, Fireside and Willies had no duty to insure that the federal trench safety regulations found at 29 C.F.R. 1926, Subpart P were implemented— absent evidence that Fireside or Willies gratuitously assumed control of the supervision of safety at the site. *Id.* at 1128.

As the trial court noted and our review of the designated materials reveals, however, the undisputed facts fail to indicate that Fireside or Willies either assumed a duty to insure Donald Slaubaugh's safety, or in any way directed, supervised or controlled the trenching work. The trial court did not err in granting summary judgment in favor of Fireside and Willies.

Affirmed.

RILEY and FRIEDLANDER, JJ., concur.

---

2. Slaubaugh predicates Willies liability upon its alleged "joint venture" with Fireside to develop Doral Village.

3. The contract for sewer trenchwork between Fireside and Elkhart did not incorporate the federal trench safety regulations, nor did it contemplate the cost of a trench safety system.

4. In *Ramon,* the State, without employing a general contractor, hired several specialized contractors, known as prime contractors, to construct a parking facility. Each prime contractor was responsible for a different type of construction work. Ramon, who was injured on the site, was employed by the subcontractor of one of the prime contractors.

*ORDER*

This Court having heretofore issued its order ordering the appellant to show cause within fifteen (15) days from the date of said order why this Court's opinion previously handed down as a "Memorandum Decision, Not for Publication" should not now be ordered published; and

The appellant having failed to show cause, this Court now finds that the Motion of the appellees Willies Development, Inc. and Willies Construction Co. for Publication of this Decision should be granted and this Court's opinion heretofore handed down in this cause marked "Not For Publication" should now be granted and this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The Motion for Publication of Decision filed by the appellees Willies Development, Inc. and Willies Construction Co. is granted and this Court's opinion heretofore handed down in this cause on March 14, 1995 marked "Memorandum Decision, Not for Publication" is now ordered published;

Aug. 10, 1995