**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 26 2012, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**HAROLD T. HARPER**
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**TERENCE M. AUSTGEN**
**ELIZABETH M. BEZAK**
Burke Costanza & Carberry, LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ALBERT VAN METER and KRISSY VAN METER, ) ) ) | |
| Appellants-Plaintiffs, ) ) | |
| vs. ) | No. 45A03-1204-CT-156 |
| ) ) | |
| UNITED STATES STEEL CORPORATION, ) ) | |
| Appellee-Defendant. ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Kavadias Schneider, Judge
Cause No. 45D01-0908-CT-136

**November 26, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Albert and Krissy Van Meter appeal the trial court's grant of summary judgment to United States Steel Corporation ("U.S. Steel"). We affirm in part, reverse in part, and remand.

## Issue

The Van Meters raise several issues, which we consolidate and restate as:

> I.      whether U.S. Steel owed a premises liability duty to Albert; and
>
> II.    whether U.S. Steel assumed a duty of care to Albert for his safety.

## Facts

Aker Construction ("Aker") was hired by U.S. Steel to change wear plates on the hopper of the number 14 blast furnace at U.S. Steel's plant in Gary. Albert was an iron worker and an employee of Aker.

The contract between U.S. Steel and Aker provided that the safety of Aker's employees and subcontractors was "the sole responsibility" of Aker and that Aker "shall take all reasonable measures and precautions at all times to prevent injuries to or the death of any of its employees . . . ." Appellants' App. p. 135. The contract also provided:

> All Work shall be subject to inspection and approval by [U.S. Steel] at all times, but such approval shall not relieve [Aker] of its complete and total responsibility for the proper performance of the Work in full compliance with all requirements of this Agreement and the other Contract Documents applicable thereto.

2

Id. at 130.

During a safety meeting on April 20, 2009, an unnamed U.S. Steel employee told Aker supervisors that scaffolding would be built on the backside of the hopper. Aker had previously replaced the wear plates by using either ladders or scaffolding. However, it was easier and safer to do the work with scaffolding. On April 29, 2009, when Aker employees arrived at the hopper, no scaffolding had been erected. An Aker supervisor contacted U.S. Steel and was informed that scaffolding would not be erected and that ladders should be used to complete the work.

Albert was on the Aker crew assigned to replace the wear plates. They were assigned to fasten the bolts, washers, and nuts on the outside of the hopper. They decided to construct temporary scaffolding to perform the work. As part of the construction of the temporary scaffolding, Albert started climbing Aker's extension ladder so that he could secure the top of the ladder. Albert was not "tied off," and no one was holding the bottom of the ladder. Id. at 199. When he was ten to twelve feet off of the ground, the ladder slid to the left, and Albert fell and sustained injuries.

In August 2009, the Van Meters filed a negligence complaint against U.S. Steel. The Van Meters alleged that U.S. Steel was negligent due to its failure to provide scaffolding and failure to maintain "a safety island on the charge deck." Id. at 38. In July 2011, U.S. Steel filed a motion for summary judgment, arguing that it was entitled to summary judgment because it owed no legal duty to Van Meter, that it did not breach a legal duty to Van Meter, and that it was not the proximate cause of Van Meter's injuries. The Van Meters responded that U.S. Steel either owed a legal duty to Albert or assumed

3

a legal duty and that genuine issues of material fact existed regarding whether U.S. Steel breached its legal duty and whether its breach was the proximate cause of Albert's injuries.

After a hearing, the trial court granted U.S. Steel's motion for summary judgment. The trial court determined that Aker was an independent contractor and that Aker and Albert were in control of the ladder. The trial court concluded that U.S. Steel did not have a legal duty to Albert and did not assume a duty. The Van Meters now appeal.

**Analysis**

The issue is whether the trial court properly granted summary judgment to U.S. Steel. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56. We liberally construe all designated evidentiary material in a light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind. 2009). The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. Id. Our review of a summary judgment motion is limited to those materials designated to the trial court. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001).

*I. Premises Liability Duty*

The Van Meters first argue that the trial court erred when it determined that U.S. Steel did not owe a legal duty of care to Albert. To prevail on a claim of negligence, the plaintiff must show: (1) duty owed to the plaintiff by defendant; (2) breach of duty because of conduct falling below the applicable standard of care; and (3) compensable

4

injury proximately caused by defendant's breach of duty. Kroger Co. v. Plonski, 930 N.E.2d 1, 6 (Ind. 2010). Absent a duty there can be no negligence or liability based upon the breach. Id. Generally, whether a duty exists is a question of law for the court to decide. Rhodes v. Wright, 805 N.E.2d 382, 386 (Ind. 2004).

The duty a possessor of a premises owes to an employee of an independent contractor is well-settled. Pelak v. Indiana Indus. Services, Inc., 831 N.E.2d 765, 769 (Ind. Ct. App. 2005), trans. denied. Generally, an owner of property is under no duty to provide an independent contractor with a safe place to work. Id. However, the owner does have a duty to maintain the property in a reasonably safe condition for business invitees, including employees of independent contractors. Id.

Despite this general duty, the trial court here concluded that U.S. Steel owed no duty to Albert because U.S. Steel had no control over the scaffolding that was being constructed by Aker. The trial court found, "AKER, by proceeding to build scaffolding, assumed the duty of care and safety of their employees and the jobsite." Appellants' App. p. 13. Thus, "the trial court did not focus upon whether a general duty was owed to [Albert], but whether a duty existed for the particular construction activity at issue." Daisy v. Roach, 811 N.E.2d 862, 866 (Ind. Ct. App. 2004). "Such an interpretation of the law is supported by our Supreme Court's decision in Rhodes v. Wright, 805 N.E.2d 382 (Ind. 2004)." Id.

In Rhodes, our supreme court held that, in premises liability cases, "whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred." Rhodes, 805 N.E.2d at 385. "The rationale is to

5

subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm." Id. Thus, despite the fact that whether a duty exists is generally a question of law, our supreme court noted that, sometimes, the existence of a duty "depends upon underlying facts that require resolution by the trier of fact." Id. at 386. The court concluded that a factual issue existed as to which party controlled the property at issue in Rhodes and found that summary judgment was inappropriate. Id.

Here, the Van Meters argue that U.S. Steel had control because it held a safety meeting "where it dictated what was to be done and how," moved the date of the work up, ordered that the plates be affixed with bolts instead of welding, and "maintained exclusive control over the decision not to provide scaffolding." Appellants' Br. p. 12. U.S. Steel argues that it had no obligation to provide scaffolding, that the ladder was supplied by Aker, and that the ladder was in Aker and Albert's control.

We find this case similar to Daisy, 811 N.E.2d at 867. There, a homeowner contracted with a construction company to perform work on his roof, and the contractor's employee was injured when the ladder he was using slid on ice on the frozen ground. The trial court granted summary judgment to the homeowner, and we affirmed on appeal. In addressing the premises liability theory, we held, based on Rhodes, that summary judgment was appropriate because the homeowner had no control over the manner in which the ladder was used. "The cause of the accident was the failure of [the contractor's] employees to safely secure the ladders they used to climb onto the roof of the house." Daisy, 811 N.E.2d at 867. We noted that, although the homeowner may

6

have "ordered the workers to shut the doors to the home, obtain supplies, and generally directed how he wanted the house constructed, the evidence does not support the conclusion that [the homeowner] was in control of the manner in which the ladders were used." Id.

Similarly, here, at the time of the accident, Aker had decided to construct temporary scaffolding, and Albert was climbing the ladder to begin that construction. U.S Steel had no involvement or control over the construction of that temporary scaffolding or how the ladder was used. The fact that U.S. Steel held a safety meeting with Aker supervisors and dictated when the work would be performed does not support the assertion that U.S. Steel controlled the manner in which the temporary scaffolding was constructed and how the ladder was used. As a result, we conclude that, as a matter of law, U.S. Steel did not owe a duty to Albert under premises liability principles.

## II. *Assumption of Duty*

The Van Meters also argue that U.S. Steel assumed a duty of care to Albert for his safety. A duty of care may also arise where one party assumes such a duty, either gratuitously or voluntarily. Plan-Tec, Inc. v. Wiggins, 443 N.E.2d 1212, 1219 (Ind. Ct. App. 1983). Section 324A of the Restatement (Second) of Torts parallels Indiana's doctrine of assumed duty. Ward v. First Indiana Plaza Joint Venture, 725 N.E.2d 134, 136 (Ind. Ct. App. 2000), trans. denied. Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm

7

resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Id.

The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. Plan-Tec, 443 N.E.2d at 1219. Failure to act in a reasonable manner will give rise to an action for negligence. Id. The existence and extent of such duty is ordinarily a question of fact for the trier of fact. Ward, 725 N.E.2d at 136. However, when the record contains insufficient evidence to establish such a duty, the court will decide the issue as a matter of law.[1] Id.

---

[1] Some Indiana cases discussing the assumption of a duty differentiate between nonfeasance, which is a complete omission or failure to perform, and misfeasance, which is a negligent performance. See, e.g., Daugherty v. Fuller Eng'g Serv. Corp., 615 N.E.2d 476, 480 (Ind. Ct. App. 1993), trans. denied. Nonfeasance is at issue here. "[W]here nonfeasance is involved in the assumption of a duty undertaken gratuitously or voluntarily, liability may arise only where beneficiaries have actually relied on the performance." Plan-Tec, 443 N.E.2d at 1220. However, our supreme court recently observed that there is a difference of opinion in the Court of Appeals on this issue. See Estate of Mintz v. Connecticut General Life Ins. Co., 905 N.E.2d 994, 1000 (Ind. 2009) (citing Holt v. Quality Motor Sales, Inc., 776 N.E.2d 361, 366 (Ind. Ct. App. 2002) ("In our view, however, the distinction between nonfeasance and misfeasance was abandoned by our supreme court in Webb v. Jarvis, [575 N.E.2d 992 (Ind. 1991)]."), trans. denied). In Estate of Mintz, our supreme court declined to resolve the dispute. Neither party mentions this split of opinion or addresses nonfeasance versus malfeasance. If the nonfeasance/malfeasance distinction survived Webb, the Van Meters would have to show that Albert relied upon U.S. Steel's promise to construct scaffolding. We conclude that genuine issues of material fact exist as to that reliance.

The Van Meters argue that U.S. Steel assumed a duty to Albert by "holding regular safety meetings" and by promising to construct the scaffolding. Appellants' Br. p. 17. Our supreme court has noted that "an employee of a construction-site contractor can be owed a legal duty of care for his or her safety by a project owner or construction manager that, though not obligated by contract to provide jobsite safety, takes actions such as appointing a safety director, initiating weekly safety meetings, and directing the contractors to observe certain safety precautions." Hunt Const. Group, Inc. v. Garrett, 964 N.E.2d 222, 229 (Ind. 2012). We readily conclude that holding one safety meeting prior to the start of the work is insufficient to establish a genuine issue of material fact regarding the assumption of a duty. However, we cannot reach the same conclusion regarding the promise to construct the scaffolding, which went beyond the requirements of the U.S. Steel-Aker contract.

During a safety meeting a few days before the work was to be performed, an unnamed U.S. Steel employee told Aker supervisors that scaffolding would be built on the backside of the hopper. Aker had previously done this type of work by using either ladders or scaffolding. However, it was easier and safer to do the work with scaffolding. When Aker employees arrived at the hopper, no scaffolding had been erected. When an Aker supervisor contacted U.S. Steel, he was informed that scaffolding would not be erected and that ladders should be used to complete the work. The Aker employees determined that a temporary scaffolding was necessary, and Albert was injured while starting construction on the temporary scaffolding. We conclude that genuine issues of material fact exist regarding whether U.S. Steel assumed a duty to Albert through the

9

statement that it would construct scaffolding.[2]  See, e.g., Perry v. Northern Indiana Pub. Serv. Co., 433 N.E.2d 44 (Ind. Ct. App. 1982) (holding that it was for the jury to determine NIPSCO's duties, if any, to the injured worker).

Similarly, the parties make arguments concerning whether summary judgment was appropriate on the issues of breach of duty and proximate cause.  Given that the work had previously been performed with ladders, a fact-finder may very well conclude that Albert's use of the ladder without proper safety precautions was the cause of his injuries rather than U.S. Steel's failure to construct the scaffolding.  On the other hand, there is evidence that it was safer to perform the work with scaffolding.  Any issues of causation and, possibly, comparative fault, are for the fact-finder to resolve.

## Conclusion

The trial court properly granted summary judgment to U.S. Steel regarding its duty to Albert under premises liability principles.  However, genuine issues of material fact exist as to whether U.S. Steel assumed a duty to Albert.  Moreover, genuine issues of material fact exist regarding breach and proximate cause.  Consequently, the trial court erred when it granted U.S. Steel's motion for summary judgment.  We affirm in part, reverse in part, and remand.

---

[2] In discussing breach and proximate cause, the Van Meters make arguments concerning the contract between Aker and U.S. Steel and intrinsically dangerous work.  These arguments seem to pertain to a nondelegable duty analysis, but the Van Meters do not argue that a nondelegable duty existed, and we do not address that topic.  See, e.g., Beatty v. LaFountaine, 896 N.E.2d 16, 22 (Ind. Ct. App. 2008) (discussing nondelegable duties), trans. denied.

10

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and MATHIAS, J., concur.